ALBANY,
Jan. 1835.

The People
v.
Gates.

---

## THE PEOPLE *vs.* GERRIT GATES.

An indictment for *obtaining goods*, or the *signature of a party* to a written instrument, by *false pretences &c.* must contain all the material facts and circumstances which the public prosecutor will be bound to prove, to produce a conviction; it must show upon its face that the offence charged has been committed, or, in the language of Lord Mansfield, it must be an intelligible story, so explicit as to support itself.

Where the *treasurer* of a religious corporation presented to the president thereof a bond for the payment of money, purporting on its face to be made in pursuance of a resolution of the consistory of the church, and obtained his signature thereto, and the treasurer was indicted under the statute punishing the *obtaining of signatures* to written instruments by *false pretences, &c.* IT WAS HELD, that it was *not enough* to allege in the indictment *the presentment of the bond* to which the signature was obtained; calling it a *false writing;* that *by color thereof* the signature was obtained; that the president *believed* it to be a *true instrument,* and also believed that its making and presentation had been authorized by the consistory of the church, although it was charged that the *treasurer* knew it to be a *false writing,* and that the issuing thereof was *not authorized* by the consistory; and that he in fact had no warrant or authority for the making of the bond or the obtaining of the signature. AND IT WAS FURTHER HELD, that the material facts and circumstances appertaining to the transaction should have been averred with due certainty, so as to show how the *presentation of the bond operated* to effect the fraud.

Although the facts and circumstances are such as fully to establish the offence, they are not admissible in evidence, if *omitted* to be set forth in the indictment; and it was *accordingly held* in this case, that evidence that the defendant was *treasurer* of the corporation, that it was his duty to prepare such bonds and notes for signature as the corporation had resolved to execute, and to present them to the *president* for signature, and that the president never did execute such instruments but upon the *representation* of the treasurer that they were duly authorized by the corporation, or by a majority of the members of the board, was *inadmissible,* because not averred in the indictment.

Had it been alleged in the indictment, that in the ordinary course of the business of the corporation, such instruments were executed, upon the

*representation* of the *treasurer* that they were duly authorized, *it seems* that the evidence of the *president*, that he never executed such instruments unless such representation was made, would have been held *competent*, although he had no distinct recollection of the particular transaction under inquiry. Such evidence *in itself* would not, however, be enough to convict, but would be admissible as a link in a chain of circumstances.

A *writing* in the *form of a bond*, neither having the signature or *purporting* to have the signature of any person attached to it, is not a *false writing*, within the meaning of the statute. To constitute it such, it must be some instrument, letter, or other writing *false* in fact, but purporting to have been *signed* by some person, and to be his *act*, and so framed as to have more weight and influence in effecting the fraud of obtaining a signature to a written instrument, or goods, &c. than the mere naked assertion of the party defrauding.

Proof that a party, from whom a note was obtained by false pretences, has been subjected to a suit, or to the payment of the money specified in the note, is *inadmissible*, unless there be a count for *obtaining money* by false pretences.

Admissions made to a clergyman may be received in evidence in a criminal case, if not made to him in his *professional character* in the course of discipline enjoined by his church.

A defendant may be tried at the same time for different offences charged in the same indictment, if the offences are of the same grade, and subject to the same punishment.

FALSE PRETENCES. The defendant was indicted at the Albany mayor's court, for obtaining by *false pretences* the signature of the president of a religious corporation to a bond and promissory note. He was tried at the Albany general sessions and convicted, but sentence was suspended, and the indictment and a bill of exceptions taken on his part at the trial was brought into this court by *certiorari* pursuant to the statute. The indictment contained two counts: in the *first*, the defendant was charged for that, on the 8th day of July, 1831, at, &c. with intent to cheat and defraud the minister, elders and deacons of the Reformed Protestant Dutch Church in the city of Albany, he did, *by color of a certain false writing*, obtain the signature of John Ludlow, as the president of the consistory of the said church, to a certain written instrument, *and which written instrument was the said false writing*, and is in the words, letters and figures following, that is to say: "Know all men," &c. setting forth in *hæc verba* a bond from the above corporation in Julia Ann Waldron, in the penal sum of $4000, conditioned for the payment of $2000, on

the 8th day of July, 1835—(Signed,) " John Ludlow, Pres't of Consistory," with the *seal* of the corporation annexed. The attestation clause in the bond was set forth to be in these words : " In witness whereof, the president of the consistory of the said church hath, *pursuant to a resolution of the said consistory,* hereunto set his hand, and caused the common seal to be affixed, this eighth day of July, one thousand eight hundred and thirty-one ;" and then proceeding as follows : which said written instrument, the said defendant, on, &c. at, &c. presented to the said Ludlow for his signature, and obtained it ; *and the said John Ludlow, then and there believing* the said above mentioned written instrument so presented to him by the defendant to be true, and that the making of it and its presentation to him had been authorized by the consistory of the said church, *and being deceived thereby,* was induced by reason thereof to give his signature to the said above mentioned written instrument. *By means of which said false writing* the defendant did then and there, to wit, on, &c. at, &c. unlawfully, knowingly and designedly obtain the said John Ludlow's signature, as president of the consistory of the said church, *whereas,* in truth and in fact the defendant *knew* the said instrument to be a false writing, and that the issuing thereof was not authorized by a resolution of the consistory ; and that he, the defendant, had no warrant or authority whatever for the making of the instrument or obtaining the signature of Ludlow thereto, to the damage, &c. The *second* count charged that the defendant, on the 25th February, 1833, with intent to cheat and defraud one John Ludlow, (the minister of the said church and president of its consistory,) did *by color of certain false writing,* obtain the signature of the said John Ludlow to a certain written instrument, as the endorser upon it, and *which written instrument was the said false writing,* and is, with the said endorsement thereon, in the words, letters and figures following, that is to say: $1500. Sixty days after date, I promise to pay to the order of John Ludlow (at the Bank of Albany) fifteen hundred dollars, value received. Albany, 25 February, 1833. Gerrit Gates, Tr. R. P. D. Church." That Ludlow, *believing* the said in-

strument so presented to him to be true, and that the making of it and its presentation to him had been authorized by the consistory of the church, and being deceived thereby, was induced by reason thereof to give his signature thereto as the endorser upon it ; by means whereof, the defendant did then and there unlawfully, knowingly and designedly, obtain the signature of the said John Ludlow to the said instrument as the endorser upon it : *whereas,* in truth and in fact the defendant well *knew* the said instrument was a false writing, and the issuing of it and *his*(the defendant's)*signature thereto as treasurer of the said church,* were not authorized by a resolution of the consistory of the said church, or otherwise ; and *whereas, also,* truth and in fact, he, the defendant, had no right or authority whatever to make said instrument and sign the same with his name and the additions thereto as follows, " *Gerrit Gates, Tr. R. P. D. Church,* " nor was he in any way or manner authorized to obtain the signature of the said Ludlow as aforesaid to the said instrument, to the great damage and deception of the said John Ludlow, with intention to defraud the said John Ludlow, to the evil example, &c. The defendant pleaded *not guilty.* Before the jury were empannelled, the counsel for the defendant moved the court that the district attorney be directed to *elect* upon which count of the indictment he would proceed ; and that in default of his so doing, that the indictment be quashed. The court refused to give such direction, and the counsel excepted. A jury were then sworn, and *John Ludlow,* a witness on the part of the prosecution, testified that he was the president of the Reformed Protestant Dutch Church of the city of Albany ; and on being shown the *bond* set forth in the first count of the indictment, said that the signature thereto was in his proper handwriting, that the bond was presented to him under circumstances that induced him to believe that it was authorized by the consistory of the church, and he therefore signed it. The body of the bond was in the hand-writing of the defendant. In answer to an inquiry of the district attorney, he said that the circumstances that induced him to sign the bond were, that he never signed such a bond, which was not authorized by a resolution of the consistory, or by a sufficient number of

the consistory to authorize him to do so. This evidence was objected to by the defendant's counsel as inadmissible, but the obejction was overruled. The witness in like manner proved his signature to the *note* set forth in the indictment, and added that the church were engaged in making repairs, and had several notes running in the bank ; that it was the practice of the consistory, when a new note was given, to pass a resolution authorizing it ; but that no resolution was passed or was considered necessary when a note to renew a former note was given : in such case, the *treasurer* drew and executed the note, and he (the witness) endorsed it without any resolution or direction.   The notes given to renew others, whilst the repairs were going on, were brought to him and he endorsed them.   The note in question was brought to him under cover, and he endorsed it as a renewal note, and never knew it to be an original note until long afterwards.  He further testified that the defendant was *treasurer* of the church, and that the letters or initials, " Tr. R. P. D. Church," added to the defendant's signature to the note and other papers, designated them as *church notes* or papers.  The defendant did not always personally present the notes for endorsement ; they were sometimes presented by his nephew.  It was always understood between him and the defendant, that the defendant did not ask him to endorse a note for him individually— he, the witness, would not have endorsed any such note for the defendant ; it was always understood that the notes and bonds he signed for the defendant were church papers, and authorized by the consistory.   On his cross-examination, he stated that he had no distinct recollection of what transpired at the time he affixed his name to the bond in question ; he knows he signed it, because his name is affixed to it. - He had no recollection of what was said by the defendant at the time, but he was perfectly sure that he never executed such a bond without the representation of the defendant that it was upon a resolution of the consistory, or that a sufficient number of the individual members of the consistory had authorized it.   As to the note, he testified that he could not say that the defendant said any thing about it when it was presented.   He could only say, it came under cover as a church note, and that the defendant usually said, *here*

*is a church note,* and witness signed it. Witness troubled himself as little as possible about the *fiscal concerns* of the church, relying entirely on the defendant as the *agent* appointed for that purpose. To an inquiry of the defendant's counsel, whether he signed the bond and endorsed the note in question from the bare fact of their being presented to him for that purpose, he answered that he did not; that, in such cases, the defendant always assured him that the papers presented for his signature were authorized, either by resolution or by individual members of the consistory; and that such assurance was given, independent of the papers. There must have been something more than the mere presenting of the papers to induce him to sign them. It was his impression, that in all cases when bonds were presented to him for signature, the seal of the corporation was affixed. The district attorney offered to prove by this witness an admission made to him by the defendant that he had no authority to make the note in question. The testimony was objected to as a privileged communication made by a church member to his pastor. The witness stated that the communication made by the defendant was not made to him as a clergyman. The objection was overruled, and the fact proved. The witness also proved that he had been sued in his individual capacity upon the note in question, which evidence was also received after objection. On the part of the prosecution, proof was adduced of the state of the defendant's accounts with the church, for the purpose of showing him in default at the date of the bond, and down to the time when he ceased to be treasurer; which evidence was objected to, but received by the court. When the public prosecutor rested the cause, the defendant, by his counsel, insisted that he ought not to be put upon his defence, for that the evidence which had been adduced was wholly insufficient to authorize a conviction. The court refused to discharge the defendant, when, after several witnesses had been called and examined on the part of the defendant, the case was submitted to the jury, who found a verdict of *guilty.*

The cause was argued in this court by

*S. Stevens,* for the defendant.

*J. L. Tillinghast & E. Livingston,* (district attorney of Albany,) for the people.

*By the Court,* SAVAGE, Ch. J. The questions arising out of the record are, 1. Whether the indictment is good in substance ; 2. Whether it should have been quashed for joining several counts, or the public prosecutor compelled to elect which count he would prosecute ; and 3. Upon the bill of exceptions, whether improper evidence was admitted.

Is the indictment good ? An indictment is a brief narrative of the offence charged ; it must contain a certain description of the crime, and the facts necessary to constitute it. 1 *Chitty's Cr. Law,* 168, 9. In general, the rules of pleading which govern in the structure of a declaration are applicable to indictments. As to the degree of certainty which is requisite, the indictment must state the facts of the crime with as much certainty as the nature of the case will admit. In a criminal charge, in the language of Lord Mansfield, there is no latitude of intention to include any thing more than is charged ; the charge must be explicit enough to support itself. 2 *Burr.* 1127. An indictment charging the defendant with obtaining money by false pretences is sufficient, without stating what those false pretences were. 2 *T. R.* 581. 2 *Maule & Selw.* 587. 9 *Wendell,* 191. 11 *id.* 557. A considerable degree of particularity in stating the false pretences is necessary, because they must be proved as laid, and slight variances may be fatal to the prosecution, 1 *Campb.* 494 ; and if they must be proved as laid, none can be proved but such as are laid. It is not sufficient merely to state that the defendant did falsely pretend, &c.—setting forth the several pretences ; but after stating the false pretences at large, the pleader must by averment falsify each pretence which he intends to rely on at the trial, as he would in an indictment for perjury.

The statute upon which the present indictment is framed is as follows : " Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing or by any other false pretence, *obtain the signature of any person to any written instrument* or obtain from any person

ALBANY,
Jan. 1835.

The People
v.
Gates.

any money, personal property or valuable thing, upon conviction thereof, shall be punished," &c. 2 *R. S.* 677, § 53. The indictment now under review charges that the defendant, on, &c. at, &c. with intent to cheat and defraud the minister, elders and deacons of the Reformed Protestant Dutch Church in the city of Albany, did unlawfully, knowingly and designedly, by color of a certain false writing, obtain the signature of John Ludlow, as the president of the consistory of said church, to a certain written instrument, and which written instrument was the said false writing, and is in the words, letters and figures following, &c. (setting forth the bond.) The indictment then states that the defendant presented the said instrument to the said John Ludlow for his signature, and obtained it; and the said John Ludlow, believing the said written instrument to be true, and that the making and presentation to him had been authorized by the consistory, and being deceived thereby, was induced to give it his signature, &c. This count in the indictment sets out *no false pretences*, but merely a false writing. The facts and circumstances, as spread upon the indictment, which deceived Dr. Ludlow and procured his signature to the bond, are simply the appearance of the defendant before him, and presenting to him a blank bond, which appeared to have been drawn for him to sign. The defendant says not a word; makes no allegation on the subject, but is perfectly mute. The indictment concludes by averring that the defendant *knew* the instrument to be a false writing, but it is no where charged that he *represented* it to be a true writing. It is also averred that the defendant *knew*, when he presented the writing, that it was not authorized by any resolution of the consistory; but it does not appear that he ever affirmed that it was so authorized. It is further averred that the defendant, when he presented the writing, *knew* that he had no warrant of authority for making it, or obtaining the signature of Dr. Ludlow. He never affirmed that he had, from any thing alleged in the indictment. Had the count charged, that when the defendant presented the writing to Dr. Ludlow, he had *represented* that it was one which he was authorized to present to him for his signature, either by a resolution of the consistory or otherwise,

then there would have been a fitness and propriety in distinctly falsifying those allegations which he had represented to be true. This count is therefore bad, unless it is sustained by the the allegation that the defendant did, by color of *a certain false writing*, obtain the signature of John Ludlow, &c.

At common law private cheats were not indictable. The only remedy was by action. The cases in which fraud was indictable at common law were, the use of false weights and measures, the selling goods with counterfeit marks, playing with false dice, and frauds affecting the course of justice and immediately injuring the interests of the public or the crown. 1 *Chitty's Cr. L.* 995. 7 *Johns.R.* 201. These depend on the the principle that they evince a general intent to defraud. To remedy the defect which existed, several statutes were passed in England. The statute of 33 *Henry* 8, *ch.* 1, after reciting that many evil disposed persons had contrived *privy tokens and counterfeit letters in other men's names*, by color whereof they obtained great substance of money, &c. creates the offence, falsely and deceitfully to obtain or get into their hands or possession money, goods chattels, &c. *by color and means of any such false token or counterfeit letter, made in any other man's name.* "Some difficulty has arisen as to what shall be considered as a *token.* It is clearly not a mere affirmation or promise, but must be something real and visible—as a ring, a key, or a writing ; and even a writing would not suffice, except it was in the name of another, or so framed as to afford more credit than the mere assertion of the party defrauding." 1 *Chitty's C. L.* 997. 2 *East's P. C.* 689. The statute of *Henry* 8 only embraced frauds committed by means of *false tokens* and *counterfeit letters.* The statute of 30 *George*, 2, *ch.* 24, extended to all persons who by *false pretences* should obtain money, goods, wares, or merchandise ; and did not, in terms, extend to securities and choses in action. This defect was remedied by the *52d Geo.* 3, *ch.* 64, which extends the provisions of the previous act to bonds, bills of exchange, bank notes and other securities ; and thus rendered criminal every description of fraud by *false pretences*, whatever property the deception was intended to obtain. The principle of the statute of 30 *Geo.* 2, *ch.* 24, was first enacted in this state in 1787,

ALBANY,
Jan. 1835.

The People
v.
Gates.

that if any person or persons shall knowinlgy and designedly, by *false pretence* or pretences, obtain from any other person or persons any monies, goods or merchandise, or other effects whatsoever, with intent to cheat or defraud, such person or persons shall be deemed guilty of an offence. The revisions of 1101 and 1813 did not materially change this phraseology. The revised statutes of 1830, created the offence of obtaining by false pretences the *signature of any person to a written instrument*. It was held, in *The People* v. *Stone*, 9 *Wendell*, 182, that it was not an offenece, under the old statutes, to obtain by false pretences an endorsement of a promissory note, unless it also was shown that the note was used or negotiated, or that the endorser had suffered inconvenience or loss. By the revised statutes, however, the offence is complete when the signature is obtained by any false pretence with intent to defraud. The statute of 33 *Henry* 8, *ch*. 1, was never in terms re-enacted in this state until 1830, nor in substance any further than it is embraced in the subsequent statute of 30 *Geo*. 2, *ch*. 24. The language in 33 *Hen*. 8, *ch*. 1, is " that if any person falsely and deceitfully obtain or get into his hands or possession any money, goods, chattels, jewels, or other things, of any other person, by color and means of any such *false token* or *counterfeit letter*, made in any other man's name as aforesaid, (referring to the preamble,) then that every person so offending." &c.  Our revised statutes say, " Every person who, with intent to cheat or defraud another, shall designedly, by color of any *false token* or *writing*, or by any other *false pretence*, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing," shall be punished.  When inquiring what the legislature intended by the expression *false token* at *writing*, it is probably not presuming too much to suppose that they had in view the statute of 33 *Henry* 8, *ch*. 1, and intended to embrace not only *counterfeit letters made in other men's names*, but any false instrument purporting on its face to be a genuine instrument of any description.  It has been adjudged that the word *token* was not satisfied by an affirmation or promise, but must be something real, visible and substantial ; so I apprehend the words *false writing* must mean

some letter or instrument purporting to be the act of some person, and so framed as to have more weight and influence in effecting the fraud than the mere assertion of the party defrauding. The words *false token* or *writing*, or *any other false pretence*, are all contained in the same section. Suppose the count had charged that the defendant had presented this same blank bond to Dr. Ludlow, without saying any thing or making any other pretence, and that, being deceived thereby, Dr. Ludlow had given the defendant $4000; could such a count come within the rule that the indictment must set forth the facts and circumstances with as much certainty as the nature of the case will admit? In such case there could be no false pretence, for there would be no pretence at all; nor, in my opinion, would there be any false writing, nor any writing at all. *Writing*, as used in the statute, must mean some *instrument*, or at least *letter*—something in writing, purporting to be the act of another, or certainly of some person; but the paper presented in this case does not answer any such description; it was no writing at all, because it did not purport to be the act of any person. *Writing*, as used in the statute, cannot mean any thing written upon paper, not purporting to be of any force or efficacy; but some instrument in writing, or written paper, purporting to have been signed by some person; and such writing must be *false*. If this is a correct exposition of the statute, the *first* count in the indictment is bad, for the writing is not such an one as the statute intended; and if it were, still there was no falsity about it; it was exactly what it purported to be—a blank bond prepared for the signature of Dr. Ludlow.

The second count in this respect differs from the first. It states that the defendant, with intent to defraud, &c. did, by color of a certain false writing, obtain the signature of the said John Ludlow, as the endorser upon it, and then sets forth a paper purporting to be a promissory note, drawn by the defendant and payable to the said John Ludlow for $1500; and avers that the said John Ludlow, believing the said instrument to be true, and that the making it and its presentation to him had been authorized by the consistory, endorsed it. It also avers that the

defendant *knew* it was false, and that the issuing and his signature were not authorized, &c. But I apprehend both counts are fatally defective, because they do not state the charge, with its circumstances, in such a manner as to show how the false instrument or pretences operated to effect the fraud. Lord Mansfield says, the charge must be explicit enough to support itself; it must relate an intelligible story. It will not do to say that the defendant by a certain false pretence effected a fraud; but the pretence must be particularly stated, with all its material circumstances, as it is intended to prove it upon the trial. 2 *T. R.* 586. So it is not sufficient to say that the defendant by means of a false token perpetrated a fraud, 2 *Str.* 1127, but the indictment must specify at length the particulars of the fraudulent representations, and show how the false token was effectual in accomplishing the fraud. 9 *Cowen*, 588, *per Spencer, senator.* And so, too, I apprehend in this case, the pleader should have stated all the circumstances which he expected to prove at the trial. In no other way can a defendant know what he must prepare to meat. I can find no precedent in this general form. They are all the other way, and state with minuteness the pretences put forth by the defendant, with the proper and special falsification of them. *The People* v. *Stone*, 9 *Wendell*, 182, was for fraudulently procuring the endorsement of A. Filley upon promissory notes ; each count of the indictment in that case states, with great particularity, the representations made—the false pretences used so as to present upon paper a case which would appear to the court to contain all the circumstances necessary to complete the offence. If such a statement is necessary, then both counts here are defective, for in neither is there any such statement of the facts and circumstances.

I will now proceed to examine the questions raised by the bill of exceptions.

*First.* The first question arising upon the trial was, whether the court should have compelled the district attorney to elect which count he would go upon. In *Young* v. *King*, 3 *T. R.* 106, Buller, justice, says, that where different felonies are included in the same indictment, the judge may quash the

indictment, lest it should confound the prisoner in his defence; but these are only matters of prudence of discretion. This court has recently said, in the case of *The People* v. *Rynders*, that there is no impropriety in trying a prisoner for different offences at the same time, if the offences are charged in the same indictment, and are of the same grade, and subject to the same punishment.

*Second.* It is said that the court below admitted improper testimony, 1. In permitting Dr. Ludlow to swear that he never signed a bond of this description which was not authorized by the consistory, or which Gates did not represent was so authorized. This is objected to for two reasons : first, because it is unsatisfactory, and does not prove the reason of signing the bond in question ; and secondly, because there is no such allegation in the indictment. As to the first reason, it is certainly not of itself sufficient to convict a defendant upon, but, connected with other testimony and other circumstances, it might be sufficient. Offences are often proved entirely by an accumulation of circumstances, when no one circumstance standing alone would justify a conviction. The tendency of the testimony was to prove the defendant's guilt. If the witness never signed any such bond but what was presented to him by the defendant, and the defendant in all cases made the representations alleged, and the witness did sign the bond in question, and it was presented by the defendant, this is nearly or quite tantamount to saying that the defendant on the present occasion made those representations. But for the other reason assigned, I think the testimony was not warranted. It has been shown that the indictment should set forth all the pretences, upon the falsity of which the defendant must be convicted, if at all. There is no allegation in the indictment that the defendant made any such representations, or any representations at all. It was improper, therefore, to permit any such evidence. 2. An objection was made to the proof of certain admissions made by the defendant, on the ground that they were confessions made a to clergyman. The answer to this objection is found in the testimony of Dr. Ludlow, that he did not consider the communication made to him in his professional character, or as a clergyman. The provision of the revised stat-

utes is this : " No minister of the gospel, or priest of any denomination, shall be allowed to disclose any confessions made to him in his possessional character, in the course of discipline enjoined by the rules or practice of such denomination." 2 *R. S.* 406, § 72. The admissions in this instance were not in the course of discipline. 3. It is alleged that the court erred in permitting evidence of a suit against Dr. Ludlow upon the note. Had the indictment been for obtaining money or personal property by false pretences, it has been settled in *The People* v. *Stone*, that such evidence would have been proper after proof of the pretences; but this indictment does not charge the defendant with obtaining the money or personal property, or other valuable thing of Dr. Ludlow. It simply charges him with obtaining Dr. Ludlow's signature to a bond, and his endorsement upon a note. When the signature was obtained, the offence was complete; and whether Dr. L. was sued or not, or paid the money, is entirely immaterial ; such testimony was improper. For the same reason it was improper to go into an examination of the books of the church, or the state of the accounts between the church and the defendant, or what was done with the instruments after the signatures were obtained. The only questions properly before the jury, were, whether Dr. Ludlow signed the bond and endorsed the note upon the pretences stated in the indictment; whether he was deceived by the blank bond being presented to him, and that alone, and therefore signed it ; and whether that bond was a false writing. So likewise of the note ; in respect to which there is no pretence but it was true and genuine.

*Third*. It is further allegded by the defendant's counsel that proper testimony was excluded. But it seems to me unnecessary to pursue this trial further. If I am right in the previous discussion, the present prosecution must fail : 1. Because the indictment is insufficient ; and 2. If it be sufficient, then it was unnecessary and improper to receive evidence of any false pretences, because none are laid.

My opinion is, that the indictment should be quashed.