COMMONWEALTH *v.* JUNIUS SMITH.

[Charged with false pretences; and the uttering and passing of a false token with intent to defraud.]

ON the 8th of April, 1843, the RECORDER gave the following opinion.

The facts of this case are, that some time ago the defendant went to board with one Michael Tomer, that while so boarding, he borrowed of Tomer small sums at various times, and occasionally, paid small amounts on account of his indebtedness to Tomer. In November last the parties met, and mutually agreed to ascertain the situation of the accounts between them. On this settlement the defendant was indebted to Tomer, the prosecutor in this case, in the sum of $10 25. Some days after, Smith making no offer to discharge the debt, or any part of it, was visited by Tomer, who asked him for the amount of the bill. Smith told him in a few days he would pay him. On the 5th of March last he came to Tomer, and gave him a check as follows:

*March 6th*, 1843.

BANK OF NORTH AMERICA.

Pay to Junius Smith or order, $10 25 cents.

$10 25.          (Signed)    CHARLES W. SMITH,

(Endorsed) J. SMITH.

On presenting this check to Tomer, Smith said, that it would be good after one o'clock on the day of its date, as the drawer was about to change his account to the

Bank of North America on the 6th; Tomer presented the check at the bank on the 6th, and found that no such person as the drawer kept an account in that bank; Tomer sought Smith, who on being informed of the worthlessness of the check, said that Charles W. Smith, the drawer, lived in Eleventh street near George, and that he was absent in Baltimore, and farther that if Tomer would give him back the check, he would get the money.    Tomer refused to surrender it, and on making inquiry was informed, no such person lived where Smith had informed Tomer the drawer resided. Smith was accordingly arrested.    He stated on the hearing that he endorsed the check, as it was drawn to his order, but on being questioned as to when and where he endorsed it, he said he did not endorse it.    He could not say who did, neither could he give any definite statement as to the person who drew the check.    He voluntarily stated, although cautioned not to commit himself by any rash admissions, that no consideration had passed from him to Charles W. Smith for which the check was given—nor was Charles W. Smith produced, although time was given to effect it.

These are the facts on which a binding over is asked under the act of assembly of this commonwealth, entitled an act "to abolish imprisonment for debt and to punish fraudulent debtors" passed the 12th day of July, 1842, and the 21st section of said act.

As there have been various constructions given to this section by my brother magistrates, but no uniform interpretation applied thereto, I have thought it proper to investigate the law relating to this new feature in our criminal code, the better to secure an intelligent appli-

cation of its provisions in the present case. In Pennsylvania, there has been no direct decision of the courts on this subject. The section of our law relating to "false pretences" is taken from a similar provision in the Revised Statutes of the state of New York. 2 Revised Statutes, page 564, § 53—and both are derived from the English statutes 7 and 8 Geo. 4, c. 29, sec. 53—which enacts, that "whereas a failure of justice frequently arises from the subtle distinction between larceny and fraud, for remedy thereof be it enacted, that if any person shall by any false pretence obtain from any other person any chattel, money, or valuable security, with intent to cheat or defraud any person of the same, every such offender, &c. See also the repealed statute of 30 Geo. 2, c. 24.

The 21st section of the Pennsylvania statute is in the following words: "Every person who with intent to cheat or defraud another, shall designedly by colour of any false token or writing, or by any false pretence whatsoever, obtain from any person any money, personal property or other valuable things, upon conviction," &c.

By reference to all these statutes, as well as that of Massachusetts, it will be found the provisions of each are alike in substance. Some verbal differences exist, but the Pennsylvania statute is the most full and explicit. It covers both the statutes of 30 Geo. 2, and 7 & 8 Geo. 4; and there is consequently less difficulty in putting a decisive construction thereon, from the various cases that have arisen, and been adjudicated both in England and this country. Under the statute 30 Geo. 2, one Freeth was tried for passing a forged promissory note for 10*s.* 6*d.*, of William Sparrow, on one Beebe, for

some bread and tobacco, and took the change, 9*s.* 10*d.*, from Beebe. This note being less than 20*s.* in amount was unlawful (statute 15 Geo. 3). The jury convicted the prisoner. The judges respited the sentence for the purpose of submitting the points raised on the trial to the whole court. A majority of the court thought the conviction right, and that it was a false pretence, although the note upon the face of it would have been good for nothing in point of law if it had not been false. "It was argued in this case that the credit was given to the note, and to no representation or pretence of the prisoner himself." "The learned judge who tried the prisoner, held that the uttering it as a genuine note was tantamount to a representation that it was so." Freeth case, 1807, M. S.; and Russ. & Ry. 127.

At the Stafford summer assizes, 1821, one Flint was tried for delivering to one Blood, certain notes of bankers at Oundle, for a gelding valued at £12, which said notes were worthless, thereby the prisoner by colour of the said papers unlawfully did obtain, &c., the said gelding with intent to cheat the said Blood of the same. In this case the prisoner was acquitted, on the ground that there was not sufficient proof that the notes were bad. Rex *v.* Flint, Russ. & Ry. 460.

In Rex *v.* Jackson et al., Cor. Bayley j., Gloucester Lent Assizes, 1813; 3 Campb. 370; Bayley j., said, "This point has been before the judges, and they were all of opinion that it is an indictable offence fraudulently to obtain goods by giving in payment a check upon a banker with whom the party keeps no cash, and which he knows will not be paid." See also 2 East P. C. p. 856. Where the pretence alleged was a representation

7*

that a check was a good and genuine order for the payment of money, it was held to be proved by evidence of a false representation of the prisoner that he had an account with the bankers on whom it was drawn, and that it would be paid.   R. *v.* Parker, 2 Mood. C. C. 1; see also R. *v.* Young, 3, 7, R. 98.

In 2 Starkie Ev. vol. 2, part 1, p. 457, it is held, "By means of false pretence it is sufficient to show that the money was obtained immediately by the means and instrumentality of the false pretence, although a previous confidence subsisted which rendered that pretence effectual."   See also Mitchell case, East P. C. 830.   In the case of the King *v.* Lara, 6 Term Reports, p. 565, much valuable information is to be found on this point, but it is not material in this case as the indictment against Lara was at common law.   See also Leach 89, S. C.; also Hawkins P. C. b. 1, c. 71, s. 1 & 2.

After thus briefly reviewing some of the English decisions on the statutes against false pretences, &c., it may not be amiss to compare them with those of our own courts.

In 1 & 2, and 5 & 6 Rogers' Criminal Law (New York City Hall Recorder), there are three leading cases, Heath's, Steel's, and George Lynch's cases, in all of which the parties were indicted and tried under the New York statute.

In Lynch's case the syllabus states: "It seems that when a man resorting to no artifice or false token, calculated to gain credit beyond his own assertion or act, founded on his own responsibility, obtains money or goods, should it appear that such assertion was false, and such act fraudulent, the offence does not fall within

the statute." The statute under which Lynch was indicted was a transcript of "30 Geo. 2," Yet the court held it was not a false pretence, although the authority of Rex *v.* Jackson, 2 Leach C. L. p. 656, was admitted by the judge; "the case cited was directly in point;" but adds the judge, "we think in England the courts have strained the principle on which this prosecution is attempted to be supported, too far."

In Massachusetts it has been held that "on an indictment for obtaining money by false pretences, the defendant assuming a false name, and delivering spurious quarters of lottery tickets to A. B. for sale on commission, with a declaration that the defendant had in a bank, the genuine corresponding whole tickets, were held to be false pretences within st. 1815, c. 136, sec. 32; held also that these facts were sufficient evidence of an intent to defraud A. B.; 4 Pickering's Reports, p. 177. The statute of Massachusetts is not in the precise words of our statute, but the substance is the same as both that of New York and Pennsylvania, as well as that of the English statutes. To constitute such false writing as is set out in the New York statutes, it is held: "To constitute it such, it must be some instrument, letter, or other writing, false in fact, but purporting to have been signed by some person, and to be his act, and so framed as to have more weight and influence in effecting the fraud, &c., than the mere naked assertion of the party defrauding. The People *v.* Gates, 13 Wend. 311.

By the act of July, 1842, under which the charge in the present case is laid, there are four ingredients ne-

cessary to constitute the offence, all of which are plain and simple in themselves.

The 1st is, every person who with the intent to cheat or defraud another; 2d, shall designedly; 3d, by colour of any false token, or writing, or by any false pretence whatsoever; 4th, obtain from any person any money, personal property or other valuable things, then he has committed the crime known as " obtaining goods under false pretences." The phraseology of the act is not as clear as it might be, but the offence is set out in apt words.

Its first and second ingredients must be substantiated by the facts, or direct inferences derived therefrom. The third is a mixed question of law and fact, and the last, is for the jury to determine. From the authorities already cited, it seems that a person with the " intent," or " design," by colour of any false token, or pretence, obtains the property, or valuable things, of another, upon his word or assertion, without any act which would give it greater weight, that in such case the fraud does not come within the statute. A mere naked lie, however base and dishonourable, is neither a false token, or writing, or any false pretence. If it be beyond remarkable prudence to credit, the error may be in the credulity of the hearer ; if it be plausible, it is the misfortune of the party wronged, caveat emptor being the rule of law in such case.

A naked lie may however be evidence of the " design" or " intent," spoken of in the act, and then it becomes of much importance to the case. I do not consider a mere lie unaccompanied by acts, calculated to establish the third part of the offence as above described, and bring

the crime within the statute. There must be some false pretence, or in the language of Spencer, who defines pretence as "the act of showing or alleging what is not real," some positive or apparent thing done, which, while it adds to the falsity, shows also the intent to cheat and defraud, and the design of doing so, by the token or pretence used to effect it.

The assertion that a forged note is good, and the person so informed, takes it from one who did not give or pass it as genuine, or with the knowledge that a third party had so pronounced it, would be a naked lie on the part of the affirmant of the falsehood, but it would not render him liable to the penalties of this act. But if a person asserts a forged note is good or genuine, and accompanying this assertion knowing it to be false, presents such a note to a person, and from him obtains goods or "valuable things," and does it designedly, he comes within the statute. The intent to defraud, and the design, are gathered not only from the lie, but the act of "showing" what is not real, to be so, by the offering a worthless piece of paper for "valuable things" of another. The same purpose may be effected by acts and writings alone, without words.

Acts speak louder than words, is a homely adage, the force of which may well be illustrated in cases of fraud such as are now under consideration. I consider a false token or pretence, to be that, which produces a belief in the party wronged, that the fraud about to be effected is bona fide, true, to be credited, or relied on, as just or genuine.

This is a general definition, so far as relates to the act of the 12th of July, 1842, for its provisions cover the

common law offence.   It is hardly necessary to enume-
rate any specific acts which would be cognizable under
this statute—such as selling by false weights or mea-
sures, or the like.   Under this act, which is so very
general in its scope, a restrained construction should be
given ; its phraseology is such, if liberally construed, as
to embrace acts which, though innocent in themselves,
might be made penal under it.   As the law implies the
quo animo, and as it is to be deduced from the facts, it
may be a matter of doubt, if the legislature intended any
other than the most restricted interpretation should be
given to it.   If a strict construction be given to it, the
words "another" and "any pretence whatsoever," may
lead even then to some embarrassment.   By the word-
ing of the section, it appears that in order to bring a
case within its provisions, the intent to cheat and de-
fraud "another," must be effected designedly, by colour
of any false token or writing, or by any false pretence
whatsoever, by obtaining "from any person" any money,
&c.   It would seem the words "another" and "any
person," are intended to convey the idea that two dis-
tinct individuals are intended.   My own opinion is,
that this was not the intention of the legislature.   The
phrase "any false pretence whatsoever," may be con-
strued as to embrace a naked lie, but under the de-
cisions cited, it would appear, in the language of the
judge in Lynch's case, as straining the law too far.
The statute is a penal one, and must be construed
strictly—and the view of it as above expressed, it will
certainly bear.

The case now before me, is one of doubt.   Had
Smith purchased goods on the representation that the

check was genuine, and paid for the goods with this check, it would be different—but the question now is, whether Tomer gave to Smith, boarding and money on the faith of the check here presented. I think not. The only offence then, is the uttering and passing this false token. A jury must decide on these facts. It is therefore ordered that Junius Smith enter into good and sufficient surety in the sum of $300, conditional for his appearance at the next term of the court of quarter sessions for the city and county of Philadelphia, and *stand committed till this judgment is complied with.*