## [No. 2746.]

### J. W. Baker *v.* The State.

1. Swindling, as that offense is defined by Article 790 of the Penal Code, may be predicated upon a negotiable or a promissory note when its execution has been procured by means of false or deceitful pretenses or fraudulent representations.

2. Same—Indictment.—It may be stated as a general rule, that whenever an instrument in writing enters into an offense as a part or basis thereof, or when its proper construction is material, the instrument should be set out in the indictment. See the opinion *in extenso* for a collocation of authorities upon the leading rules to be observed in framing indictments for swindling based upon written instruments.

3. Same.—Written instruments may be charged in an indictment according to their legal effect equally as well as by their outward form; and there are two ways of setting out words, whether written or spoken, the one by their substance and the other by their tenor.

4. Same—Evidence.—If an indictment professes to set out a written instrument by its tenor, whether the law has made so exact an averment necessary in the particular case or not, the proof must conform thereto with almost the minutest precision.

5. Same.—If the instrument be set forth *hæc verba*, or by its "tenor," or if the averment be "in words and figures following," then the word "tenor," or the expression "words and figures following," bind the pleader to the strictest accuracy in proof.

6. Same—Delivery.—In a prosecution for obtaining the signature of another to a written instrument by false pretenses, it is not sufficient that it be shown that the instrument was signed; a delivery must also be shown. Allegation in the indictment, however, that the defendant unlawfully obtained the signature will, it seems, be sufficient, without averring a delivery in terms.

7. Same.—Indictment for swindling need not allege in express words that the party defrauded relied upon the false representations, because this is a necessary implication from the allegation that he was induced by the false representations to part with his goods or money, or do the thing complained of.

8. SAME—CASE STATED.—The instrument to which signatures were pro-
cured is set out in the indictment by averment "in words and figures fol-
lowing." Then follows the instrument to all appearances *hæc verba*, in-
cluding the signature of the appellant. The signatures of the two par-
ties alleged to have been induced to sign the note are not attached to the
instrument set out, but, following the note as set out, it is alleged that
defendant, after signing the note himself, procured them by his false
representations to sign and affix their names thereto as drawers, stating·
fully the circumstances, and that they did so sign the note before the
same was delivered to the payee. *Held*, that the allegations are suffi-
cient, and that it was proper to set out the note as it appeared after de-
fendant's signature, or, as done in this case, by showing the note as it
was before the fraud was perpetrated, and then properly and fully aver-
ring the mode, manner and circumstances by and under which the note
was subsequently signed by the injured party or parties.
9. SAME—EVIDENCE—VARIANCE.—A variance between the note itself and·
the instrument as declared on *hæc verba* in the indictment, whether such
variance·be material or immaterial, disqualifies the former as evidence.
To be competent it must appear to be an exact duplicate of that set
out in the indictment.

APPEAL from the District Court of Hill. Tried below before
the Hon. Jo. Abbott.

The charging part of the indictment reads as follows:
*    *    *    "J. W. Baker, late of said county, on or about the
twenty-second day of December, 1882, and in said county and
State, did then and there, with a wilful design to receive benefit
to him, the said J. W. Baker, and to cause injury to one Tom
Bell and to one J. J. Stoker, request and solicit the said Tom
Bell and J. J. Stoker to sign as drawers a certain promissory
note, in words and figures following, to wit:

"$50.                         HILLSBORO, Texas, Dec'm 22, 1882.
"Forty days after date, we, or either of us, promise to pay to
the order of H. W. Dudley fifty dollars at the Hillsboro, Texas,
with 12 per cent interest per annum from maturity until paid;
and in the event default is made in the payment of this note at
maturity, and it is placed in the hands of an attorney for collec-
tion, or suit is brought on the same, then an additional amount
of 10 per cent on the principal and interest of this note shall be.
added to the same as collection fees.
"(Signed)                                    J. W. BAKER.
"Due Feb. 1st, 83.

"And that said Tom Bell and said J. J. Stoker, so as above requested and solicited, did then and there sign their respective names as drawers on said note, and as an inducement for them, the said Tom Bell and J. J. Stoker, respectively, to sign their names as aforesaid on the note, he, the said J. W. Baker did then and there falsely and deceitfully pretend and fradulently represent to them, the said Tom Bell and J. J. Stoker, that he, the said J. W. Baker, did then and there have two bales of cotton at a certain gin at or near Woodbury, Hill county, Texas, and that said bales of cotton should be applied by him, the said J. W. Baker, to cover and pay the said note; whereas, in truth and in fact, he, the said J. W. Baker, did not then and there have two bales of cotton at a certain gin at or near Woodbury, Hill county, Texas, and did not then and there intend to apply said two bales of cotton, or any cotton, to cover and pay the said note; and the said J. W. Baker well knew that said pretense and pretenses and representations to be false, deceitful and fraudulent; by means of which said false, deceitful and fraudulent pretense, pretenses and representations, so made to the said Tom Bell and J. J. Stoker, he, the said J. W. Baker, did then and there, fraudulently and with the wilful design to cause an injury to said Tom Bell and the said J. J. Stoker, procure and obtain then and there the signatures as drawers on said note of the said Tom Bell and the said J. J. Stoker, by and from them, the said Tom Bell and the said J. J. Stoker, respectively, to and upon the said note; and the said J. W. Baker then and there by the said false, deceitful and fraudulent pretense, pretenses and representations, so made to the said Tom Bell and the said J. J. Stoker did acquire from the said Tom Bell and J. J. Stoker the said note so by them signed as aforesaid, the same being an instrument of writing conveying and securing a valuable right of the value of fifty dollars, with the intent to appropriate the same to the use of him, the said J. W. Baker, and with the wilful design to receive the benefit of the same and to cause an injury to them, the said Tom Bell and J. J. Stoker; and afterwards, to wit, after the said note became due and payable according to the tenor thereof, they, the said Tom Bell and J. J. Stoker, by reason of their said signatures thereon as aforesaid, were obliged to pay the amount thereof, and did pay the same, to wit, the sum of fifty dollars, to their great injury; contrary," etc.

The trial resulted in the conviction of the appellant, and he was awarded a term of three years in the penitentiary.

Tom Bell was the first witness introduced by the State. He testified that on or about the twenty-second day of December, 1882, the defendant came to him at his store in Hillsboro, Texas, with a note for fifty dollars, payable to H. W. Dudley, and requested the witness to sign the note with him, the defendant. The witness at first declined, but the defendant persisted in his request, assuring the witness that he had two bales of cotton at a gin near Woodbury, which he would apply to the payment of the note. He also informed the witness that J. J. Stoker would also sign the note. Under these inducements and representations the witness finally consented and signed the note. When the note became due the witness paid, as he was compelled to do, twenty-five dollars to H. W. Dudley. The defendant was in town at that time but did not come to see the witness. The witness went to see him, defendant, but the defendant paid no part of the note. The witness identified the note in evidence as the one he signed.

J. J. Stoker was the next witness for the State. He testified that he signed the note on the same day and under the same inducements that were held out to the witness Bell, and on maturity paid twenty-five dollars on it to H. W. Dudley. The defendant represented to him that it was too muddy to haul his two bales of cotton from the gin near Woodbury, but promised to haul the cotton to Hillsboro and take up the note as soon as the roads were sufficiently dry. The witness had previously signed a note with the defendant for sixty dollars, which the defendant shortly paid. Until this offense, the witness had never heard the defendant's character for honesty questioned.

H. W. Dudley testified, for the State, that the note executed and signed by the defendant, and Tom Bell and J. J. Stoker, was made payable to him, the witness. The witness identified the note in court, and said that it had been worth fifty dollars to him. It had been paid in equal parts by Tom Bell and J. J. Stoker.

The note was next introduced in evidence. It varied from the instrument as set out in the indictment in these particulars: In the body of the note, the word "dollars" following the word "fifty" is repeated thus, "dollars Dollars," whereas in the instrument as set out in the indictment the word "dollars" appears but once; in the body of the note between the words

"the" and "Hillsboro" the words "Hill county bank," erased with a horizontal line appear, whereas in the instrument as set out in the indictment such words do not so or otherwise appear; in the body of the note, between the words "per annum" and "maturity until paid," the word "from" appears repeated thus: "from from," whereas in the indictment such word "from" appears but once; and in the note the names "Tom Bell" and "J. J. Stoker" appear under the signature "J. W. Baker," whereas they do not so appear to the note as set out in the indictment.

Henry Sherod, for the State, testified that the defendant's wife had as many as four bales of cotton ginned at the witness's gin near Woodbury, in the fall of 1882. That there were two bales of cotton belonging to that lady at the gin after her marriage to the defendant in November, 1882, but only one bale remained there after December 1, 1882. The reputation of the defendant for honesty about the Woodbury neighborhood, where he lived, was not good.

John Howell testified, for the State, that the defendant raised no crop of any kind in 1882. The defendant married in the latter part of November, 1882. His wife had some cotton. The defendant's reputation for honesty about Woodbury was very bad.

The motion for new trial was based upon the following grounds:

The verdict was "contrary to the evidence in this, that the evidence showed that there were two separate acts, one with Tom Bell, and one with J. J. Stoker, relied on in the evidence to support the one charge of the indictment as one act with Tom Bell and J. J. Stoker."

That "the indictment charges the offense of inducing Tom Bell and J. J. Stoker to sign a certain note as one act of defendant, whereas the evidence showed the procurement of their signatures to the note at two several occasions."

"That the court erred in admitting the note in evidence," because of the several points of variance indicated in the statement of the case.

The motion was overruled, and appeal prosecuted.

*Abney & Pendleton,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Swindling, as an offense under Article 790, Penal Code, may be predicated upon a negotiable or a promissory, note where its execution has been procured by means of false or deceitful pretenses or fraudulent representations. Before we address ourselves to the questions directly raised on this appeal, and as incidental thereto, we will succinctly state some of the leading rules with regard to indictments for this offense, as laid down in the elementary works and adjudicated cases.

· A similar offense to the one charged in the indictment before us was prescribed by the fifteenth section of the Act of 1854, defining swindling (Laws 1854, p. 61), which section is now no longer in force; and a full discussion of its meaning and construction was had by our Supreme Court in *The State* v. *Baggerly*, 21 Texas, 757. In that case it was said: "The note is the central fact upon which all the other facts in the case must concentrate, and no good reason is seen why it should not be set out or described, as in forgery, so that the particular note may be identified and known. With the most liberal construction, it must be held that it must be so described as that, when presented in evidence, there would be reasonable marks of identity."

As a general rule, whenever an instrument in writing enters into an offense as a part or basis thereof, or when its proper construction is material, the instrument should be set out in the indictment. (*White* v. *The State*, 3 Texas Ct. App., 605.)

In Alabama, where one was indicted for obtaining the signature to an instrument by false pretenses, its *tenor* was adjudged necessary to be averred. (*Langford* v. *The State*, 45 Ala., 26.) But an indictment for thus obtaining a check for the payment of money, not setting it out at length, was, in Massachusetts, held good. (115 Mass., 481; 2 Bish. Crim. Proc., § 178.) It is in all cases desirable ordinarily to set out the instrument itself. If this is not done *hæc verba*, then in lieu thereof such a description of it must be given as will be sufficient to accurately identify it, and with certainty, when offered in evidence, to support the descriptive allegation. In *The People* v. *Gates*, 13 Wend., 311, it was held that, "An indictment for obtaining the signature of a party to a written instrument by false pretenses, etc., must contain all the material facts and circumstances which the public prosecutor will be bound to prove to produce conviction; it must show upon its face that the offense charged has been

committed; or, in the language of Lord Mansfield, it must be an intelligible story, so explicit as to support itself."

But even written instruments may be charged in an indictment according to their legal effect, equally as well as by their outward form, and there are two ways of setting out words, whether written or spoken; the one by their substance, the other by their tenor. Mr. Bishop says, "If the indictment professes to set out a written instrument by its tenor, whether the law has made so exact an averment necessary in the particular case or not, the proof must conform thereto with almost the minutest precision." (1 Bish. Crim. Proc., 3 ed., 488; 1 Whart. Crim. L., 8 ed., § 737.) If the instrument be set forth *hæc verba*, or by its "tenor," or if the averment be "in words and figures following," then the word "tenor," or the expression "words and figures following," bind the pleader to the strictest accuracy in proof. (2 Whart. Crim. L., 6 ed., § 1471; *Roberts* v. *The State*, 2 Texas, Ct. App., 4; *ex parte Rogers*, 10 Texas Ct. App., 663–4; *Brown* v. *The People*, 66 Ill., 314; S. C., 1 Hawley, 228.)

In the case under consideration the promissory note is set out "in words and figures following, to wit."

Again: to sustain a prosecution for obtaining the signature of one by false pretenses to a written instrument, the mere fact of the instrument having been signed is not enough; a delivery must also be shown, because the signing without delivery would harm no one. It seems, however, that an allegation that defendant acquired or unlawfully obtained the signature will be sufficient, though it do not aver a delivery in terms. (*Fenton* v. *The People*, 4 Hill, N. Y., 126; *People* v. *Stone*, 9 Wend., 182.)

It has been held that an indictment for false pretenses which does not allege that the prosecutor relied on the false pretenses as true, is bad on motion to quash (*Jones* v. *The State*, 50 Ind., 473; S. C., 1 Hawley, 218); but the better doctrine seems to be that it is not necessary to allege in express words that the party defrauded relied upon the false representations made, but that this is a necessary implication from the allegation that he was induced by the false representations to part with his goods or money, or do the thing complained of. (*Norris* v. *The State*, 25 Ohio St., 217; S. C., 2 Hawley, 85; *People* v. *Jacobs*, 35 Mich., 102; S. C., 2 Hawley, 102.)

As stated above, the instrument to which the signatures were procured is by averment set out in the indictment "in words and figures following;" then follows the instrument, to all ap-

pearances *hœc verba,* including the signature of appellant. Signatures of Bell and Stoker, the two parties alleged to have been induced to sign the note, are not attached to the instrument set out, but, following the note as set out, it is alleged that defendant, after signing the note himself, procured them by his false representations, to sign and affix their names thereto as drawers, stating fully the circumstances, and that they, Bell and Stoker, did so sign the note before the same was delivered to the payee. We are of opinion that the allegations are sufficient, and that the pleader could have either set out the note as it appeard after they signed it, or shape his allegations, as he has done, by showing the note as it was before the fraud was perpetrated, and then properly and fully averring the mode, manner and circumstances by which the note was subsequently signed by the injured party or parties.

Considered in the light of the authorities, we are of opinion that the indictment fully and sufficiently states the offense sought to be charged. When, however, the pleader offered in evidence the original note, which was the basis of the prosecution, defendant objected to it, amongst other things, because it varied in several particulars from the instrument declared on; which objection was overruled and the evidence admitted. In this the court erred. It is manifest that the note offered was not a literal and exact duplicate of the one set out in the indictment, in several particulars. Whether these points of difference or variance are material or immaterial is not the question. By his manner of pleading, the prosecutor had declared upon the note by its tenor, and he was held to the strictest and utmost precision in the proof. "Every part of a written contract upon which suit is brought is material to its identity, and a variance in any respect between the instrument described in the petition and that offered in evidence will be fatal." (*Shipman* v. *Fulcrod,* 42 Texas, 248; *Waimbish* v. *Taylor,* decided by the Commissioners of Appeals, present term.) If such is the rule in civil, *a fortiorari,* the same should be the rule in criminal cases.

For error of the court in admitting the evidence, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Opinion delivered June 2, 1883.