## Ex-Parte George S. Wells—Habeas Corpus.

1. "An act to dissolve municipal corporations under circumstances therein stated and to provide provisional governments for the same," approved January 28, 1885, (as amended by the act approved February 12th, 1885,) and providing in its first section that "whenever any city or town, incorporated under the general municipal corporation act, approved February 4th, 1869, is indebted to the amount of $200,000, and has defaulted, and still defaults in the payment of its interest account, the charter of such city or town shall be, and is hereby declared to be, repealed and the incorporation thereof dissolved," is not a special law within the prohibition of Sections 17 and 18, of Article 4, of the Constitution, but is a general law for the establishment of a uniform system of municipal governments within the meaning of section 21 of the same article, such act itself creating a new class of municipal corporations and imposing like duties, and bestowing like powers on each municipality of the class.

2. The fact that there may be at the time of the approval of a statute only one municipality of a class does not of itself render the statute creating this class special and unconstitutional.

3. The above statute applies as well to municipalities which may hereafter have such indebtedness and default in paying its interest account as to those which, at its approval, had such indebtedness and have since been in default.

4. The second section of the act making it the duty of the Governor to ascertain and declare by proclamation to what corporations the first section applies does not confer judicial or legislative powers on the Governor within the prohibition of the article of the Constitution dividing the government into legislative, executive and judicial departments, and providing that no person properly belonging to one shall exercise any function properly appertaining to the others.

5. Where a part of an act is unconstitutional the other portions of the act will not be affected by it if they are capable of being executed without it in accordance with the purpose of the Legislature.

6. When a statute imposes a duty on the Governor it is not necessary for it to prescribe the manner of its performance.

7. A provision making it a felony for an officer of a preceding municipality to refuse to deliver public property to an officer of the succeeding government, and punishing the offence by fine and imprisonment, is matter properly connected with the dissolution of the former and institution of a succeeding municipality, and the title of the act being "an act to dissolve municipal corporations under certain circumstances and provide provisional governments for the same," is sufficient to cover such criminal provision under Section 14, of Article 4, of the Constitution.

8. Where the Legislature provides for the government of a class of municipalities Commissioners to be appointed by the Governor, and that the Commissioners shall elect one of their number as President, and that such President shall be vested with all the powers and charged with all the duties belonging to a Mayor under the general municipal incorporation act, and such general municipal incorporation act is, with special exceptions, made applicable to the new class of municipalities, such President can exercise the judicial powers of the Mayor under such latter act, and such legislation does not violate Section 16, of Article 6, of the Constitution, providing that "the Legislature may establish courts for municipal purposes only in incorporated towns and cities," and that "all laws for the government of municipal courts shall be general in their provisions and equally applicable to the municipal courts of all incorporated cities and towns;" nor does it violate section 18, of the same Article, providing that "no other courts than herein specified shall be organized in this State."

Statement of the case:

This case involves the constitutionality of the statute entitled "An act to dissolve municipal corporations under circumstances therein stated and to provide provisional governments for the same," approved January 28th, 1885, and the act amendatory thereof, approved February 12, 1885.

The first section of the former act provides that " whenever any city or town incorporated under the act for the incorporation of cities and towns, approved February 4, 1869," is indebted to the amount of $200,000, and has defaulted and still defaults in the payment of its interest account, the charter of such city or town shall be, and the same is hereby declared to be repealed, and the incorporation thereof dissolved. The second section makes it the duty of the Governor, immediately upon the passage of the act, to issue his proclamation of such fact and transmit the same, together with a certified copy of the act, to the Mayor of each city and town in the State, and also makes it the Governor's duty immediately after the expiration of fifteen days from the date of the issuance of such proclamation " to ascertain, and declare by proclamation, to what corporation the foregoing section applies, and said proclamation shall be conclusive evidence of its truth, and shall be made so soon after the expiration of the said fifteen days as the facts mentioned in the first section shall become known to him." The third section provides that the officers of such dissolved corporations shall continue to be custodians of its property of every description, " and shall continue to exercise the functions of their respective offices so far as may be necessary to preserve the peace and good order of such city or town until the establishment of another government, and the appointment and qualification of officers under it, and makes it the duty of such former officers to transfer and deliver to the new officers on demand all such property. The fourth section makes a refusal to deliver any such property a felony, punishable by fine or imprisonment or both. The fifth section makes it the duty of the Governor to appoint a Board of seven Commissioners, who shall elect from their number a President, and a President *pro tem.*, to act in the former's

absence. The Commissioners are to hold office for four years. Vacancies are to be filled by the Governor, " and such President shall be vested with all the powers, and charged with all the duties belonging to the Mayor, under the act of February 4, 1869, and the amendments thereto, except as hereinafter provided." By section six all such cities and towns for which Commissioners shall be appointed, as provided for in section 5, are declared to be provisional municipalities, the boundaries of which shall be co-extensive with the boundaries of such defunct cities and towns, and the said Commissioners, and such officers as may be appointed and the inhabitants within the limits thereof, shall be vested with all the powers and authority, rights and privileges, and charged with all the duties which are conferred on the Aldermen and other officers, and the inhabitants under and by virtue of the act approved February 4, 1869, and the amendments and other acts, " except as hereinafter provided and as may be inconsistent with this act; and all ordinances in force in such defunct corporations shall remain in force until altered or repealed by said Commissioners." Section seven provides that the Commissioners shall take the oath prescribed by section 5 of the act of February 4, 1869, and for filing a copy of the same and of the Governor's proclamation in the office of the Clerk of the Circuit Court of the county. The eighth section was repealed by the act of February 12th. The ninth section as amended by the latter act provides for the assessment and collection annually by the County Assessors and Collectors of such taxes as may be ordered by the Commissioners, and for the payment of the same to the County Treasurer, who is made Treasurer of said provisional municipality. This section also provides that the sheriff of the county in which such city is situated is to perform the duties of Marshal for such provisional munici-

pality, and to appoint, subject to approval and removal by the Commissioners, such "numbers of policemen" as may be authorized by the Board; and further provides that clerk of the county perform all the duties of the City Clerk for such municipality. Provision is made for the compensation of such officers, and for their entering into "bonds with securities" for the faithful performance of their duties, and it is provided that "if any of said officers shall fail to qualify as required the Governor shall appoint a suitable person in his place who shall give like bond and with sureties to be approved by the board, and who shall be authorized and empowered to perform all the duties required by law of such officers." Section 10 is practically supplanted by amendatory section 9. Section 11 relates to the President's compensation, and section 12 makes provision for the Commissioners levying immediately "a sufficient tax, in addition to the other necessary taxes now required by law, to discharge and pay the matured coupons of the bonds of such city, and other matured indebtedness," with a proviso as to the Board's contesting claims. This section also provides for a levy of a special annual tax to meet the accruing annual interest of the bonds of the city. The 13th section provides that no claim shall be paid until audited and allowed by Board, and then only on an order of the President, countersigned by the clerk; and section 14 gives power to sue and be sued, in the same manner as other municipalities in this State.

*J. P. Jones* for Petitioner.

I respectfully submit that the "act to dissolve municipal corporations, under circumstances therein stated, and to provide provisional governments for the same," approved January 28th, 1885, is unconstitutional and void.

1st. Because its title contains more than one subject matter, to wit: the subject of " dissolving municipal corporations," and the subject of " establishing provisional governments for the same," and further, it embraces another subject matter, not expressed in the title, to wit: in section 4, creating or making that a crime which was not such before, it not being indicated in the title, nor being matter properly connected therewith, in violation of section 14 of Art. 4, Con. Fla., which declares that " each law enacted in the Legislature shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title," &c. Sec. 14, Art. 4, Con. Fla.

And again, it is not providing *specially* a law for the punishment of crime, to wit: the refusal to deliver the property on demand, only in cities that may *default* in payment of interest on an indebtedness of not less than $200,000, and in such special contingencies, where the Governor may choose to proclaim a charter repealed, in violation of section 17, Art. 4, Con. Fla., prohibiting the enactment of special or local laws for the punishment of crime. Sec. 17, Art. 4, Con. of Fla.

The Supreme Court of Michigan says: " The practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which would succeed upon its own merits, was one both corruptive of the legislator and dangerous to the State." It is scarcely more so, however, than another practice, also intended to be remedied by this provision, by which, through dexterous management, clauses are inserted in bills of which the titles give no intimation, and their passage secured through legislative bodies, whose members are not generally aware of

their intention and effect. The People vs. Mahoney, 13 Mich., 494.

2d. Because it is in conflict with sections 17, 18 and 21, of Art. 4, of the Con. of Fla. Section 1 of said act, under consideration, attempts to establish a class of cities and towns by a standard of indebtedness, coupled with default in payment of interest thereon. The *default* is the contingency which is to give life to the statute and put it into operation, and to work the repeal of the charter of a municipal corporation. Now, we submit, as this contingency—the *default*—is to affect *only cities and towns, incorporated under the act of 4th February, 1869,* and that are indebted in the sum of $200,000, how can it be said to have a *"uniform operation* throughout the State," as required by section 18, Art. 4, Con. of Fla., which declares that in such cases "all laws shall be general and of uniform operation throughout the State." Sec. 18, Art. 4, Con. of Fla.

The *contingency* is the *default* in payment of interest, and this, it will be observed, is contingent upon other contingencies, viz: whether the Governor chooses to proclaim the city or town out of existence; whether those entrusted with the municipal business see fit to permit the charter to *collapse;* to be repealed by failure to pay the interest, and remit its inhabitants to another form of government against their will. The power of repealing one law and putting another into operation being dependent upon contingencies, the happening or not happening of one or all of these contingencies. The breaking up and establishment of municipal corporations, left to the will of the Governor, or to the creatures of the corporation, instead of being exercised by the Legislature, within the limits prescribed by the sections of Constitution referred to. I deny that the Legislature, under our Constitution, has the power to make a statute dissolving or establishing municipal corporations,

or repealing of statutes, dependent upon contingencies of that character. It would be confiding to others legislative discretion, which they are bound to exercise themselves. Whether the law would have a uniform operation throughout the State would depend upon the performance of judicial functions by the Governor; the amount of indebtedness of the city or town, coupled with default in payment of interest; the ability to pay by the corporation, or willingness to pay, and upon failure to pay, after demand, and not *upon a fixed rule prescribed by the Legislature.* "The uniform operation" would be the result of chance, and not of the operation of a fixed rule, prescribed by the Legislature, while the Constitution contemplates no such contingency. The government in each class *must be the same,* and such must be the result of the action of the Legislature, independent of the contingencies." McConihe, Mayor, vs. *ex rel.* McMurray, 17 Fla., p. 268.

III. Section 2 of the act provides that the "Governor of the State shall ascertain and declare by proclamation to what corporations the foregoing section applies, and said proclamation shall be conclusive evidence of its truth." It is made his duty to determine—it matters not how—the amount of indebtedness of all the municipal corporations in the State, and further, whether any such has defaulted and still defaults, in the payment of interest; and his ascertainment, it matters not how arrived at, is made conclusive evidence, and settles the fate of such corporations as he may see fit to put his foot upon; and this too without a hearing. Mr. Cooley, in his excellent work on Constitutional Limitations, says: "It is eminently proper that cities should be heard on the question of their incorporation." Cooley's Con. Lim., p. 118; see also 13 Grat., p. 78, and 23 Barb., 33.

Upon the Governor it is sought to confer the power of

making and unmaking municipal corporations in the State of Florida in the face of the constitutional provisions which prohibit the Legislature from " passing special or local laws regulating county, township and municipal business" (sec. 17, Art. 4, Con. Fla.,); that requires that in "such cases and all other cases where a general law can be made applicable all laws shall be general and of uniform operation throughout the State" (sec. 18, Art. 4, Con. Fla.,) ; and which requires the Legislature " shall establish a *uniform system* of county, township and municipal government" (sec. 21, Art. 4, Con. Fla.,); and that " all laws of a general nature shall have a uniform operation." Sec. 11, Bill of Rights.

The Governor says it is my edict that your charter is forfeited, and cities and towns fall as fast as he chooses to issue his pronunciamentoes. Now, I submit, that the duties of the Executive of the State are plainly defined by the Constitution. Art. 3, Con. of Fla., says : " The powers of the government shall be divided into three departments, legislative, executive and judicial ; and no person properly belonging to one of the departments shall exercise any functions appertaining to either of the others, except in those cases expressly provided for by this Constitution." Art. 3, Con. Fla.

It is not competent for the Legislature to abridge or extend them. The duties sought to be required of the Governor by this section are clearly judicial, which the Legislature can neither extend to him, require of him, nor can he exercise them.

It is sought to confer upon him power to ascertain and declare to what cities this act applies; to consider and conclusively determine the amount of and validity or legality of the indebtedness of the various municipal corporations; their default in the payment of interest, and by his judg-

ment destroy and make new governments, without a hearing on the part of the inhabitants, or those having claims against them as a corporation.

It is the province of Judges to determine what is the law applicable to existing cases. Cooley's Con. Lim., p. 92.

IV. Section 5 of the act makes it the duty of the Governor to appoint seven Commissioners and prescribes their duties. Now if *the contingencies*, to which I have already referred, happen, and the repeal of the charter becomes operative, the act provides for a new form of government for such cities and towns, materially differing from the form of government provided for all municipal corporations by existing laws. Conceding that the Legislature may revoke charters, or that cities may be classified by some rule of uniform application, and different degrees of power confided to cities and towns of different classes, yet I insist that the form of government in each class must still be in accordance with some general plan of uniform operation.

It is a *uniform system* of municipal government that the Constitution requires the Legislature to establish. A system is defined by Mr. Webster to be a complete whole of objects, related by some common law or principle or end; a regular union of principles or parts forming one entire thing; as a system of government, one complete plan or whole. A system that authorizes the people to elect their local officers in one city, and authorizes the Governor of the State to appoint them for another, is not a uniform system of municipal government. A system that confides the government of one city to a Mayor and a Board of Aldermen, known as the City Council, and the government of another to a body of Commissioners who appoint the head as Presi-

19

dent, authorized and empowered to act as Mayor in the execution of the ordinances, existing and to be made, certainly lacks that *uniformity* required by the Constitution.

What system does the Constitution contemplate, taking into consideration the several clauses of the Constitution relating to municipal corporations? Does not the language of section 17, Art. 4, Con. Fla., indicate the system intended? It declares that the "Legislature shall not pass special or local laws in any of the following enumerated cases * * * * regulating the *election* of county, township and municipal officers * * * providing for opening and conducting *elections* for State, county and municipal officers, and designating the places of *voting*." Does not this language indicate the right of the people in municipal business to *local self government*, and is it competent, under that instrument, for the Legislature or the Governor to take it away? 55 N. Y., p. 50.

Again, this section of the act undertakes to establish a municipal court, by indirection only, neither elected by the people, nor appointed by the Governor. The seven Commissioners elect the Mayor or President, who is empowered to hold a municipal court. The appointees of the Governor virtually establish the court—not the Legislature—in a government or municipality that has been dissolved, in the face of the constitutional provisions which distinctly declare that the Legislature shall establish courts for municipal purposes only in incorporated towns and cities. All laws for the organization or government of municipal courts shall be general in their provisions and be equally applicable to the municipal courts of all incorporated towns and cities, "and no other courts than those herein specified shall be organized in this State." Sec. 16 and 18, Art. 6, Con. Fla.

Here we have a court appointed by the appointees of the

Governor, essentially differing from the municipal courts established in other cities and towns.

V. Sections 9 and 10 of act refer to the other officers for the city government, viz: Tax Assessor and Collector, &c. I have endeavored to show that it is the spirit of our Constitution that municipal offices should be created *under some uniform system*, and that the system contemplated is by election, and that any action of the Legislature which destroys the uniformity of the system of municipal government, and establishes systems of government essentially differing in the manner of the election of officers, their terms of office, and the manner, of assessing and collecting the revenue, is obnoxious to the Constitution. State *ex rel.* Haley vs. Stark, 18 Fla., 255.

The form and name cannot change the substance. The act is simply an attempt to evade the letter and spirit of the Constitution: "A thing within the intent of a constitutional enactment is for all purposes to be regarded as within the words and terms of the Constitution; and a legislative enactment evading the terms and frustrating the general and clearly expressed or necessarily implied purposes of the Constitution, is as clearly void as if in express terms forbidden." People *ex rel.* Bolton vs. Albertson, 55 N. Y., p. 50.

" Where the legislative intent is that the whole of a statute shall operate to accomplish an evident end and purpose, if that portion of the act providing for the accomplishment of the final purpose is unconstitutional, the dependent and initiatory provisions of the act must fail also. Where an act provides for the dissolution and re-incorporation of a municipality, and it is clear that the dissolution is authorized only as a step looking to, and a foundation for, the re-incorporation, if that portion which provides for the re-

incorporation is unconstitutional, the whole act must fail." State *ex rel.* Haley vs. Stark, 18 Fla., 255.

*D. L. McKinnon* on same side.

A written constitution is a limitation upon the powers of government, says Judge Cooley, 5th Ed. of Cooley on Const. Lim., p. 47, and note 1.

The *intent* is *the main* object in construing Constitutions. Idem, p. 68, and notes. "*The thought* which it expressed." Idem, p. 69. "Narrow and technical reasoning is misplaced, *when* brought to bear upon an instrument framed by the people themselves," &c. Idem, p. 72.

"Arguments ' *ab inconveniente* ' should not bend the Constitution to suit the law of the hour." Greencastle Township vs. Black, 5 Ind., 557 ; Oakley vs. Aspinwall, 3 N. Y., 547, 568.

It must be expected that inconveniences will arise from following the Constitution as it is written, but that will not justify its violation. 5 Ed. Cooley on Const. Lim., pp. 85, 86 and 87, and note 3.

The duty of courts is to ascertain facts, and next determine the law applicable to such facts, and if a law is unconstitutional to declare it void. Idem, p. 58.

It is not necessary that there should be an express inhibition, or an express command in the Constitution, which has been disregarded by the Legislature, to render an act unconstitutional and void. The Legislature can no more violate its implied restrictions than it can its positive ones. The courts hold one as sacred as the other. People vs. Albertson, 55 N. Y., p. 50; Taylor vs. Commissioners of Ross county, 23 Ohio St., 22. See what Webster said in note 2, p. 67, Cooley on Const. Lim.

It is not necessary that each and every clause or section militate against the Constitution in order to vitiate the

whole act.  If any essential part of it is unconstitutional it vitiates the whole act.  The State *ex rel.* vs. Starke, 18 Fla., 255.

I will now proceed to point out what I conceive to be some of the unmistakable conflicts of the act with the Constitution and endeavor to show that there is not enough of its Constitutional provisions left to effect the purpose or intent of the Legislature, and consequently the whole act must be declared void.

The first section of the act is subject to several constitutional objections, either of which it seems to me would be sufficient to invalidate the whole act as the remainder of the act is dependent upon it.

1st. It is wanting in uniform operation, as it does not purport to apply to all the cities and towns in the State, which are in a similar financial condition, but only to those which were organized under the act of February 4, 1869, making no provision whatever for its " operation " upon those that were organized anterior to the passage of that act, or upon those that may be organized in the future, either under that act or any other subsequent legislation. "Incorporated" and is "indebted" are the terms dealing entirely in the past and present, excluding as fully as if in express terms all other cities and towns not already organized under that act, and already indebted in that amount, and not already " defaulted," and still " defaulting " in the payment of their interest accounts. There are indispensable conditions to put in operation the statute.  And notwithstanding within a week after the passage of the act a dozen other cities or towns in the State might become in the same financial condition as the city of Pensacola, nevertheless the statute, by its own terms, would prevent its operation upon them, because they did not happen to be in that condition at the time the act was passed.  Can it be said

that is not in conflict with sections 17, 18 and 21, of Art. IV, of the State Constitution? Is it not special law regulating municipal business, "and wanting in uniform operation throughout the State?" Can there not be under it two instead of one form of government, for corporations possessing the same conditions. Indeed, it is necessarily so, if in the future towns or cities are so unfortunate as to become in the same financial condition. They cannot bring themselves within the terms of the act, as that only related to past and the present conditions of corporations. To make a law of uniform operation within the meaning of the Constitution, its terms must be such as to not only cover stated conditions which exist, but must also cover those stated conditions as they may arise.

The question is not simply whether it is of uniform operation at the time it is invaded, but it must of necessity remain so in the future. And its terms must be such as will cover all similar conditions that may arise in the future. This act lacks that element and, therefore, lacks uniformity. There may be, (and I believe is one, at least,) corporation in the State that was organized long anterior to the act of the 4th February, 1869, which have never re-organized under the act of 1869, whose financial conditions may be the same or even worse than that of Pensacola, still the act cannot operate upon them. And it is doubtful if the terms of the act would permit its operation upon any corporations that were not originally organized under that act.

There may be corporations organized under the act of 1869, in the future, whose financial conditions may become similar to Peasacola's, still the act could not affect them.

There may be corporations organized under future legislation whose financial condition may become similar, still this act cannot reach them. Hence we may have three

classes of corporations, possessing the same financial conditions as that of Pensacola, exempt from the operation of the statute, and under a different form of government, producing the very confusion and multiplicity of municipal governments intended to be prevented by the Constitution.

It does not prescribe "a rule of civil conduct," nor deal with the future, but acts upon a past and present state of facts, allowing the towns and cities no opportunity of avoiding its infringement. It is rather adjudicative than legislative. It is the exclusive, and I may add, sole province of the legislative department of the government to prescribe rules to affect a state of facts that may arise in the future; but when it attempts to act upon a past or present state of facts, it transcends its constitutional powers, usurps judicial functions, which renders its acts void. 5th Ed. Cooley on Const. Lim., p. 111.

The Convention which vested the exclusive power in the Legislature to make laws, had in view the common law definition of law.

And this court in 11th Fla., (I believe,) has decided that the legislature are restricted in the exercise of their powers by common law definitions, as well as courts are, and have refused to permit the legislature to extend jurisdiction of courts by enlarging the definition or scope of writs of prohibition as they are defined at common law.

The second section of the act is subject to two constitutional objections:

1st. It confers judicial powers upon the Governor, which is obnoxious to the 24th Art. of the Constitution. The Governor cannot "ascertain and declare" to what corporation the section applies without going into a judicial investigation. Unconceded facts, and the law applicable to them, can only be ascertained legally by a judicial investigation, and that too upon a case made between the parties.

The Governor will have to determine whether the city or town has been organized under the act of 1869, and whether this act applies to those old corporations who have accepted the provisions of the act of 1869, or only to those originally incorporated under the act and also the amount of the city's indebtedness as well as whether it is a valid or fraudulent indebtedness, all of which requires the exercise of judicial powers as defined by Judge Cooley and forbidden by the 3d article of the State Constitution. See Cooley on Const. Lim., pages 109 and 110. As to executive acts see Sill vs. Corning, 15 M., 97 and 303.

2d. It makes the Governor's proclamation " conclusive evidence of its truth;" something which the Legislature itself cannot do directly, and is as obnoxious to common reason, common right and common justice, as it is to the Constitution. It is an effort to authorize the establishment of a fact by a simple fiat, whether it exist or not. It is an effort to confer upon the Executive Department of the State a power which the three departments, legislative, executive and judicial combined, cannot exercise. The Legislature had as well attempt to confer the power upon the Governor to ascertain the guilt or innocence of an individual suspected of crime and make his proclamation conclusive evidence of his guilt, as to say that a city or town shall be adjudged bankrupt without notice or an opportunity to be heard in its own behalf. There is about as much " due process of law " in one case as the other. The idea is repulsive to all judicial minds and indicates a moblike disposition unworthy the era in which we live.

As Judge Cooley says, " such power assimilates itself more closely to despotic rule than any other attribute of government."

Even a deed executed with all of the formalities of law and duly recorded cannot be made conclusive evidence of

title. Cooley on Const. Lim., p. 454, and a host of authorities cited in note 2.

The statute does not point out in what manner the Governor is to " ascertain " the facts upon which he is to make his "conclusive" proclamation. And as the Governor may adopt a different method or rule in each case to ascertain the facts, the statute is wanting in uniformity in that respect. He may, so far as he is directed or restricted by the statute, consult madam rumor, the great talebearer and scandalmonger of all ages, to ascertain the facts, which his proclamation is to make " conclusive." And in another case he may take a squib from a disreputable newspaper as sufficient evidence of the financial status of the city. And if the statute is worth anything at all the fact proclaimed by the Governor is as incontrovertible and unalterable as the laws of the Medes and Persians. Can it be said that not only the rights of individuals, but the rights of whole communities in these days of constitutional government are held by such a precarious tenure ? Is not the idea antagonistic to the entire spirit of our Constitution ? If so, it is as much forbidden thereby as if it fell within words of inhibition.

Had the statute provided that the production of the bonds and overdue and unpaid coupons of the city to the Governor would have been sufficient to warrant the proclamation, which, when made, would be *prima facie* evidence, and also provided means for those interested to have controverted and contested the facts, it might have passed constitutional muster in that respect. But to say that the mere proclamation of an officer, who has no better opportunity of knowing anything about the facts than any other individual, shall be " conclusive evidence," is too repugnant to common sense to receive serious judicial consideration.

The 4th section of the act contravenes the 14th section of

Art. IV of the State Constitution. The "felony" created by it is not "expressed in the title," nor is it a "matter properly connected with the subject matter." Even if it was "properly connected with the subject matter" it should have been mentioned in the title. Cooley on Const. Lim., 179. The Legislature could be easily misled by the title. 47 Ind., 50; 18 Fla., 736.

2d. It is in conflict with sec. 17 of Art. 4, because it regulates the duties and punishments of a certain class of officers and is not applicable to all others.

The 5th section of the act is in conflict with sections 16 and 18 of Art. VI of the State Constitution. The "organization and government of the municipal courts," provided for by this section, are not "equally applicable to the municipal courts of all incorporated towns and cities." It does not purport to make them applicable to all, only to a certain class, and in point of fact it is only applicable to one. Is that not a plain conflict?

2d. And is it not organizing a court not specified in the Constitution which is prohibited by sec. 18 of Art. VI?

The 8th section militates against sec. 27, Art. IV, of the Constitution.

1st. Because it does not provide for the election by the people, or appointment by the Governor, of the Marshal and Clerk who are in the strictest sense officers, but confers that power upon the Commissioners.

Because it does not fix the compensation of the Marshal and Clerk, but confers that power upon the Commissioners. The same may be said of the President's compensation.

The Constitution is mandatory as to these matters, and the Legislature cannot delegate the power to another any more than it can delegate the power to levy taxes for State purposes.

Nowhere in the Constitution do we find provision made for the Legislature to provide provisional governments for municipal corporations; while we find an express command for them to establish a uniform system of municipal corporations, as well as several inhibitions against special legislation to regulate their business. And it is a well settled rule of constitutional construction that when the Constitution provides the manner in which the Legislature is to do a certain thing that it by necessary implication forbids its being done in any other manner. Therefore, if for no other reason, the effort to establish provisional governments for municipal corporations renders the act wholly unconstitutional and void.

The Convention that framed the Constitution seems to have devoted more attention to guarding municipal corporations against legislative interference than any other department of government.

*W. A. Blount* for the State.

MR. JUSTICE RANEY delivered the opinion of the court:

I. The first objection urged is that the first section of the act is "wanting in uniform operation, as it does not purport to apply to all the cities and towns in the State, which are in a similar financial condition, but only to those which were organized under the general act of March 4, 1869, for the incorporation of cities and towns, making no provision whatever for its operation upon those that were organized anterior to the passage of the latter act or upon those that may be organized in the future under such act or any other subsequent legislation."

Are there any cities or towns in this State "organized anterior" to the act of March 4, 1869? An act approved

August 6, 1868, (chapter 1638,) having practically the
same title, and being to a great extent the same in effect as
the act of 1869, provided by its thirtieth section that all
the powers and privileges conferred by it might be exer-
cised by any city or town previously incorporated, and
made it lawful for any such city or town to re-organize its
municipal government by a voluntary surrender of its
charter, and by an organization under such act; and also
provided that upon a failure of any city or town to accept
the provisions of the act within six months after its ap-
proval, " all the acts vesting such city or town with power
are hereby repealed." The same provisions are found in
section 30 of the act of 1869, (chap. 1688,) as applicable to all
cities and towns incorporated prior to February 4, the day of
its approval, the only difference being that nine months,
instead of six, are allowed for acceptance of its provisions.
This act also expressly repeals that of 1868. Thus far it
is plain that there are no cities or towns in existence whose
recognized *legal* organization antedates the act of February
4, 1869, or rests upon any prior law. Chapter 1756, which
became a law February 3, 1870, and is entitled " An act
relating to Cities," recites, in its preamble, that the act of
1869 did not intend to affect the organization of any city
or town made under the act of 1868, and declares valid all
proceedings, past or future, of the officers of any *city* so or-
ganized. We do not think it necessary, in view of an act of
1872, to be mentioned, to pass upon the validity of this act,
as it does not pretend to speak as to any organization made
prior to the act of 1868. In 1872, " An act relating to
Municipal Governments," was passed, and it provides that
all cities and towns which prior to February 4, 1869, re-or-
ganized under the provisions of the act of 1868, and have
since been exercising the privileges and powers granted by
said act and the act of 1869, or any act passed subsequently,

" be and the same are hereby made and declared to be legal municipal corporations and governments, the same as it legally organized under the said act" of 1869. It also declares all acts and doings of such governments and their officers under any law of the State to be valid, and that such corporations and their officers shall have all the powers granted by the act of 1869, and all subsequent acts relating to municipal corporations. We think it is clear that since the approval of this act on the 14th day of February, 1872, all cities or towns organized or re-organized under the act of 1868, and which failed to re-organize under the act of 1869, stand as incorporated under the act of 1869, and depend upon it and its amendments for corporative power. This being so there are no cities or towns existing whose organization antedates, in the eyes of the law, the act of 1869.

We do not understand the act now in question as applying only to cities which were at its approval indebted in the sum mentioned. The language of the first section is sufficient to cover any city or town which may become so indebted. " Whenever," means " at whatever time." Substituting these words and reading the section: That at whatever time any city or town in this State, incorporated under the act of 1869, " is indebted to the amount," &c., "and has defaulted, and still defaults in the payment of its interest account, the charter of such city or town shall be and the same is declared to be repealed and the incorporation thereof dissolved," it is plain that the effect of this section is prospective. We do not think that the other sections of the statute change the effect of this. We think the purpose of the second section was to prescribe the duties of the Governor as to corporations to which it would apply up to the expiration of fifteen days. Should any other city or town in the future, organized or to be organized

under the act of 1869, become so indebted, and be in default, it would be the Governor's duty under sections 1 and 5 to appoint commissioners. So far as cities and towns to be organized under any "subsequent legislation," if the act of 1869 shall be simply repealed there will be no subsequent legislation; if it shall be amended, and the amendment exclude subsequently organized cities or towns from the scope of this act, the question will be upon the validity of such amendatory provision; but if the act of 1869 is entirely supplanted by another statute, such statute will provide whether the act in question shall stand as a part of the new system or fall altogether. The word "incorporated," when taken with the other words of the section, means cities or towns which, at the time of such default, are incorporated under such act. We are no more at liberty to insert the word "heretofore" than "hereafter" before it. The *fact* of incorporation, and not the *time*, is the material point. We understand the effect of the word "*still*" to be that if a municipality which has at any time defaulted should pay up before the proclamation or appointment of officers that it would be relieved from the provisions of this statute. It is a rule of construction that a statute should be construed so as to give it a prospective and not a retroactive effect, unless its terms will clearly not permit it, as well as a rule that a statute should be so construed as to avoid the objection of unconstitutionality, if reasonably possible. Cooley's Const. Lim., 370, 184.

II. It is contended that the act is in violation of sections 17, 18 and 21, of Article 4, of the State Constitution. Section 17 provides that "the Legislature shall not pass special or local laws in any of the following enumerated cases, viz: * * * regulating county, township, or *municipal* business; regulating the election of county, township and *municipal* officers." Section 18 provides that "in *all* cases

enumerated in the preceding section, and in all other cases where a general law can be applicable, all laws shall be *general* and of *uniform* application." Section 21 provides that " the Legislature shall establish a uniform system of county, township, and municipal government." It is claimed to be a special law regulating municipal business, and to be wanting in uniform operation throughout the State; to relate to past and present conditions of corporations, and not to future conditions.

The Constitutional provisions cited have been before this court several times. In the case of McConihe vs. McMurray, 17 Fla., 238, there was involved a statute which purposed to create a third *class* of municipal corporations, in addition to the two existing classes. The two classes were, first, a town having less than three hundred voters, and second, a city having at least three hundred voters. The third class proposed, was any city containing sixteen hundred or more registered voters, and it was to have powers and privileges different from those conferred on the other classes. The statute of 1879 left it discretionary with cities having 1,600 or more registered voters to become a city of the third class, or to remain one under the second class under the former statute. The court held that the act of 1879 was a statute regulating municipal business, and must be general and of uniform operation throughout the State, and that it was unconstitutional in that it wanted such uniform operation, and also because it could not constitute a part of " a uniform system of municipal governments " as required by the Constitution. The opinion quotes approvingly what is said by other Supreme Courts of laws of a general nature, having a uniform operation. In Iowa, it is said : " These laws are general and uniform, not because they operate upon every person in the State, for they do not, but because every person who is brought within

the relations and circumstances provided for, is affected by the law. They are general and uniform in their operation upon *all persons in the like situation*, and the fact of their being general and uniform is not affected by the *number of persons* within the scope of their operation." 20 Iowa, 342. The provisions of the Iowa Constitution were that " the General Assembly shall not pass local or special laws for the incorporation of cities and towns," and " that all laws of a general nature shall have a uniform operation." In Illinois, where the limitation is similar, the court holds that " it is not admissible, either by the letter or the spirit of the Constitution, that dissimilarity in character of organization or powers in municipalities of the same *class* or *grade* shall be created or perpetuated by enactments of the General Assembly," and that " it is the substance and not the mere form given to the enactment which must determine its constitutionality." 83 Ill., 590 ; 82 Ill., 473. In California, (17 Cal., 554,) with a like constitutional limitation, the court held a general law of uniform operation to be such a law as bore equally in its burdens and benefits upon persons standing in the same category.

Speaking of the act of 1879, this court, through Mr. Justice Westcott, says : "*Did* the *act* create a class of municipal corporations of 1,600 registered voters or more, we do not doubt it would be a general law of uniform operation, but such is not the case. The *local option* authorized makes it a matter of *discretion* with all cities containing 1,600 or more registered voters, to remain in the class containing 300 voters with a municipal government prescribed for that class or to be embraced in the 1,600 or more class, under another and different municipal government for that class. In the event all the cities with 1,600 or more registered voters should accept this act as the law of their organization, the law might in fact have a uniform operation. That

uniform operation, however, would be the result of *chance* and not of the operation of a fixed rule prescribed by the Legislature, while the Constitution prescribes no such contingency. The government in each class *must be the same,* and such must be the result of the *action of the Legislature* independent of the *contingency of local discretion or option,* in the premises. The Legislature must itself, independent of acceptance by such cities, so frame its enactment that there shall be no dissimilarity in character of organization or powers in municipalities of the same class. So much, *therefore,* of the act of 1879 as authorizes a new class of cities with additional powers in such cities, we think unconstitutional."

As to section 21 of Art. 4, it is said, in the same opinion: " There is little difficulty in determining the signification of the word ' system,' in this connection. Its general signification is plan, arrangement, method, and when used in reference to municipal government, it means simply *rules and regulations for the organization and government* of municipal corporations," and that consequently the mandate to the Legislature is that it shall establish uniform rules and regulations for their government. It also says : "A system of municipal government in which cities of the *same class* may have dissimilarity in character of organization, as well as different powers, is not a uniform system within the meaning of the Constitution. Uniformity indicates consistency, resemblance, sameness, a conformity to one pattern. The Constitution does *not* prohibit a *classification* of municipal corporations, but it does require that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions."

In the case of State *ex rel.* vs. Stark, 18 Fla., 253, the court construed a statute of February 24, 1881, entitled

" An act to repeal and dissolve municipal corporations under certain circumstances, and to provide the manner in which such cities may become re-incorporated." The act provides for a dissolution of municipal corporations having a bonded indebtedness, the bonds to be past due and unpaid, and a fund for their payment not having been provided * * : On the written application of holders * of one-half of the unpaid bonds of the city to the Judge of the Circuit Court, accompanied with satisfactory evidence that the city is *prima facie* bonded, and that the bonds are ' past due and unpaid and for which a fund for their payment has not been provided it shall be his duty to make a certificate of such facts, and cause ' the papers ' to be filed in the office of Clerk of the Circuit Court.' * * On the presentation of a certified copy of this certificate to the Governor of the State, he is to issue a proclamation declaring that the charter of the city is repealed and the corporation dissolved. The act then provides for * * incorporation * * as follows: ' On petition of 20 or more persons residing in the limits of the city thus dissolved it is made the duty of the Governor to appoint a Mayor and five Aldermen, * * to hold their office for two years; * any vacancy * is to be filled by the Governor.' " " The municipality thus organized," says the court, " is called a provisional municipality, but it is in fact a permanent government. The boundaries are to be the same as those of the one dissolved, and it is to have all the powers of the antecedent corporation so far as they existed under the act establishing a uniform system of municipal governments. * * It is plain that the *Legislature* by its action instead of *establishing* a uniform system of government for cities having a bonded debt past due for which payment has not been provided, *places it within the discretion* of the holders of one-half of the city's bonds, and twenty persons residing

within its limits, *to fix* the *character* of its government, to say whether its Mayor and Aldermen, its Marshal, its Clerk, its Treasurer, shall be elected by the people or appointed by the Governor, and whether the assessment and collection of its revenue shall be done by its own officers or by officers of the county in which the municipality may be situated.  *  *  *  Any action of that department of the government which destroys the uniformity of a pre-existing system, and *permits* and *authorizes* in cities *similarly situated* systems of government differing essentially in the manner of the selection of officers, their terms of office, and the manner of the assessment and collection of revenue, cannot be sustained.  *  *  *  There may be ten cities in the precise situation of the city of Fernandina with reference to population, indebtedness and in all other respects, and yet, dependent upon the action of one-half of its bondholders and twenty residents, five of them may continue under the elective system of municipal government, and four of them through the action of some of their creditors and residents may adopt the system of appointment by the Governor.  *  *  *  The Legislature must so act as to *itself* establish, first a system of municipal government, and second the system must be a uniform system."  In conclusion, the court says: "In what we have said it must be understood that we do not decide or hold that the Legislature can under the Constitution authorize the holders of one-half of the bonds of an indebted corporation to dissolve such corporation; nor do we mean to say that the act stripped of the discretion vested in the bondholders would be constitutional. We decide the precise question before us, nothing more. We say that even if such power exists, it is here so exercised that it cannot be given effect and operation."

In the case of Lake vs. State *ex rel.,* 16 Fla., 501, it was held that " a statute which creates a new class of munici-

pal corporations, leaving nothing to option or discretion as to its operation in creating the new class, and which imposes like powers upon each municipality of the new class, *is a law of uniform operation* within the meaning of that term as used in the Constitution of the State." The facts of this case were as follows: Chapter 3162, (Laws of 1879,) entitled "An act to provide a uniform system of quarantine in this State," provided that the Mayor, Aldermen and City Physician, if there be one, of every incorporated city or town in this State shall be and are hereby constituted a Board of Health for said incorporated city or town, and when there is no incorporated town or city the Board of County Commissioners shall constitute the Board for such county. Chapter 3212, approved March 7, 1881, provides that the Governor shall appoint for any incorporated city or town, containing 300 or more registered voters, a Board of Health, consisting of five discreet persons; * all vacancies occurring to be filled by the Governor; and the Mayor of the city and Chairman of the Board of County Commissioners to be *ex-officio* members of the Board. The latter act was claimed to be unconstitutional as not uniform in its operation. The court say: "This enactment applies to all cities and towns containing 300 or more registered voters. The exercise of legislative power is *positive* and *fixed* in its results. There is neither local option nor discretion in the matter of its application. It creates a class of municipal corporations with powers regulated by the number of its regisered voters, that being the standard rule by which the class is fixed and ascertained. If the city or town belongs to the class created by the law the act operates *proprio vigore* without reference to the assent or dissent of the municipalities or the electors within them. As to the class created the powers are uniform and identical. We simply follow the views expressed * in McConihe vs.

McMurray, * the conclusion reached being that this act is not subject to the objection of a want of uniformity in its operation within the meaning of that term as used in the Constitution."

The statute now in question is not marked with the infirmity of local option, or discretion as to acceptance of it, which was fatal to the act of 1879, nor with that of the discretion of a certain number of bondholders and residents, which destroyed the act of 1881, but it acts *proprio vigore*. Of this there can be no doubt.

It is contended that this act was intended for, and in fact applies only to the city of Pensacola, and is consequently a *special* act. This court will not perpetrate an insincerity by denying that the reputed condition of that city led to its enactment. We have spent no inconsiderable time or labor in endeavoring to find adjudications covering the objection made, and our labors have not been unsuccessful.

In Pennsylvania the Constitution provided "that the General Assembly shall not pass any local or special laws * * * regulating the affairs of counties, cities, townships, wards, boroughs or school districts; * * * nor shall they indirectly enact such special or local law by the partial repeal of a general law; * * * nor shall any law be passed granting powers and privileges where the granting of such powers or privileges shall have been provided for by a general law." The Legislature passed an act dividing the *cities* of the State into three classes " for the exercise of certain corporate powers, and having respect to the numbers, character, powers and duties of certain officers thereof." Those containing a population of 300,000 to be the first-class; those containing between 300,000 and 100,-000 to be the second class; and those containing between 100,000 and 10,000 to constitute the third class. It was

contended that this act was void because there was but one city in the State having a population of over 300,000. The court say that " a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special, and comes within the constitutional prohibition." After affirming the right to classify, the court further say: " But it is contended that even if the right to classify exists, the exercise of it by the Legislature, in this instance, is in violation of the Constitution for the reason that there is but *one city* in the State with a population exceeding 300,000; that to form a class containing but one city is in point of fact legislating for that one city to the exclusion of all others, and constitutes the local and special legislation prohibited by the Constitution. This argument is plausible, but unsound. It is true, Philadelphia ' is the only city in the State, at the present time, containing a population of 300,000.' It is also true that the city of Pittsburg is rapidly approaching that number, if it has not already reached it by recent enlargement of its territory. Legislation is intended not only to meet the wants of the present, but to provide for the future. It deals not with the past but in theory, at least, anticipates the needs of a State, healthy with a vigorous development. It is intended to be permanent. \* \* \* Classification does not depend upon numbers. \* \* \* The word is used not to designate numbers, but a rank or order of persons or things ; in society it is used to indicate equality or persons distinguished by *common characteristics,* as the trading classes or the laboring classes ; in science it is a division or arrangement containing the subordinate divisions of order, genus and species." "If the Constitution means what the complainants aver that it does, Philadelphia can have no legislation that is not common to all *other cities* of the State, and for this there is absolutely no remedy.

but a change in the organic law itself." If it be true, as' counsel for petitioner seems to intimate, that there is another city in Florida whose financial condition may be the same or even worse than that of Pensacola then it will be' presumed that the Legislature was not influenced merely by the condition of the latter to create this new class of municipal corporations.

In State *ex rel.* vs. Tolle, 71 Mo., 645, it was held that an act providing that in all cities having a population of over 100,000 inhabitants a board consisting of the Circuit Judges of such cities should have certain powers, was held not to be a special law. The court say : " Nor do we think the act in question is a special law within the meaning of the Constitution. The distinction between general and special laws is very clearly laid down by the Supreme Court of Pennsylvania in Wheeler vs. Philadelphia, that ' a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special,' and that classification does not depend on numbers." Vide also 20 Iowa, 338, and 40 N. J., (Law,) 1, 8. St. Louis was the only city of such population. It is true there was a special constitutional provision upon which of itself the statute could have been maintained, yet the view of the court is, as above, upon the particular question.

In New Jersey the Constitution provides : " The Legislature shall not pass private, local or special laws in any of the following enumerated cases, that is to say : * * * regulating the internal affairs of towns and counties, appointing local officers or commissioners to regulate municipal affairs." Clause II, §VII, Art. IV. A statute approved March 6, 1877, repealed all public, special and local laws providing for the appointment of commissions and Commissioners by the Legislature, to regulate municipal'

affairs, and substituted a board of six persons with the
same powers to be chosen by the voters. It was claimed
to be a special law. The court say: "In point of form it
is manifest that this act does not belong to such a category.
* * * Upon the face of this law the repealer is general
and the substitution of other agencies equally so." "But
it is said that, although such is the frame and aspect of
this statute, still it must be regarded as local and special as
of necessity it can be applicable to but a few places of the
State, inasmuch as it is well known that few localities in
the State have been subjected to the rule of legislative com-
missions. This contention assumes the truth of the hy-
pothesis that a law that embraces but a *few localities* or a
*small number* of *objects* is not a general, but a special or lo-
cal law. But I think there is a mistake in this. The
term general law does not import universality in the sub-
ject or operation of such law. * * * Interdicted, local
or special laws are all those that rest on a false or deficient
classification. Their vice is that they do not embrace all
the class to which they are naturally related. They create
preference and establish inequalities. They apply to per-
sons, things or places possessed of certain qualities or
situations, and exclude from their effect other persons,
things or places which are not dissimilar in these respects.
The present law is not objectionable on the former ground
assigned—that in its operation it must necessarily be con-
fined to certain localities. As it does not exclude from its
sway or effect any place or subject belonging to the class to
which it relates, it is upon its face a general and not a lo-
cal or special law within the clause of the Constitution
now under consideration." VanRiper vs. Parsons, 40 N.
J., (Law,) 1. In the same case, p. 125, it is said in reply
to the contention, that in Jersey City alone were there
such commissions: " Conceding that an examination of

the public statutes of which the.courts take judicial notice will reveal the truth of this reason, yet I think the conclusion asserted does not follow ; the law in all its provisions is general, broad enough to reach every portion of the State, and abating legislative commissions for the regulation of municipal affairs wherever they existed. Such commissions are distinguished from other sorts of Municipal Governments by characteristics sufficiently marked and important to make them clearly a class by themselves, and upon the whole of this class this law operates equally by force of terms which are restricted to no locality. A law so framed is not a special or local law, but a general law without regard to the consideration that within the State there happens to be but *one individual of the class or one place where it produces effects.*" In the case of Worthly vs. Steen, 43 N. J., (Law,) 542, the facts were that an act provided that any incorporated borough having not more than 150 voters, might, at an election, decide whether or not such borough incorporation should be continued or set aside, and it was held that such a repealing act was not within the constitutional provision. We may observe that in New Jersey, contrary to the rule here. and in other States, a classification based on population is repudiated by the courts. Anderson vs. Trenton, 42 N. J., (Law.) 486 ; Coutiere vs. New Brunswick, 44 N.·J., (Law,) 58 ; Hammer vs. State, 44 N. J., (Law,) 667 ; Zeigler vs. Gaddis, 44 N. J., (Law,) 363.

We think these authorities show that the fact that an act is really applicable to but one municipal corporation, or, in other words, that there is but one which at the time of its enactment comes under its provisions, is not sufficient to make a law special, and not general. It is true that in each of the States mentioned in this connection, it is held that where the act is so framed, though in form of a gene-

ral law, as to prevent it from ever applying to other corporations which might, through increase of population or otherwise, come within its terms, that then the law is special and unconstitutional. Where this is held, though, it was the evident purpose of the law to arbitrarily give to a particular municipality, or several municipalities, a special power or privilege, and in neither of them was a forfeiture or ground of dissolution declared, or a separate classification of governments made to meet the necessities calling for such dissolution. In each of them the power to classify is recognized, though New Jersey holds that there must be natural and substantial characteristics upon which the classification is based, and that mere difference of population is not sufficient, and that the courts are the judges of the classification. In neither of the cases is the power to dissolve and reorganize on a different basis or form of government discussed.

In 1879 the Legislature of Tennessee passed "an act to repeal the charter of certain municipal corporations, and to remand the territory and inhabitants thereof to the government of the State." Its first section enumerates a number of charter acts, all of which but one or two, (if in *fact* there is any exception,) refer only to the city of Memphis. Section 2 repeals the charters of all municipal corporations having a population of 35,000 or over by the *census of* 1870, or, (section 3,) at the passage of the act. Section 3 also provides that "the Governor of the State will ascertain and declare by proclamation to what corporation the third section applies; said proclamation shall be conclusive evidence of its truth, and shall be made within ten days from the passage of this act." Section 4 repeals sections 33 to 80, inclusive, of an act entitled "an act to regulate and organize municipal corporations of certain population, and for the increase and diminution of their powers," and all other acts

in conflict with the repealing act, but leaving in full force certain sections of said last entitled law. Sections 33 to 80 were those under which said repealed corporations were governed. Said section 4 resolves the populations back into the body of the State, withdraws the power of taxation and reserves it to the Legislature, and transfers public buildings, and other property used for municipal purposes, to the State. On the same days that this act was passed and approved, there was passed and approved another act, entitled " a bill to establish taxing districts and to provide the means of local government for the same." Its first section provides that " the several communities embraced in the territorial limits of all such municipal corporations in this State as have had, or may have their charters abolished, or as may surrender the same under the provisions of this act, are hereby created taxing districts, in order to provide the means of local government for the peace, safety and general welfare of such districts."

The Constitution of Tennessee provides that " no corporation shall be *created* or its powers *increased* or *diminished* by special laws ; but the General Assembly shall provide by general laws for the organization of all corporations hereafter created, which laws may at any time be altered or repealed, and no such alteration or repeal shall interfere with or divest rights which have become vested."

" There can be little doubt," says the Supreme Court of Tennessee in the case of Luehrman vs. Taxing District, 2 Lea, 425, " that the repealing act was *directed* and *exclusively applied* to the corporation of the city of Memphis, and just as little doubt that the main object of the other act was to furnish a new charter for the inhabitants of the territorial limits of that city." The court holds that " municipal corporations are within the absolute control of the Legislature, and may be abolished at any time in its dis-

cretion, and an act which repeals the charter of a single municipal corporation is constitutional." In 1875 the Legislature had passed a general law for creating all municipal corporations in the future, and specially defining the powers, mode and rate of taxation, form of government, and names of officers and for all proper powers, (p. 467.) "And I am not prepared," says Judge Cooper, delivering the opinion of the court, " to hold that there is anything in the language of the Constitution which prohibits the Legislature from repealing, at any time, the corporate privileges of a particular community whether organized previously or subsequently to the adoption of the Constitution. This power is so essential to sovereignty and the preservation by the State of its control over its instrumentalities of local rule, that it cannot well be considered as cut off except by a positive provision to that effect. The restriction is against the powers of a corporation being ' diminished ' by special laws not against their entire abolishment. And we may conceive of a case whereby the vicissitudes of trade, as in the case of Old Sarum in England, and some of the mining towns of California, the special repeal of a particular charter might be demanded by public policy, where a general repeal might be a remedy worse than the disease." It is true that the clause of the Constitution cited was subsequently held to apply only to private corporations ; (12 Lea, 246, A. D. 1883 ;) yet in the Luehrman case, decided in 1879, the decision was " upon the concession that public corporations are included."

It being clear that the mere fact that there is but one of a class, does not render legislation covering such class special the question presents itself whether or not the Legislature can create a class on the basis of indebtedness, and define the amount and character of the indebteduess which shall characterize the class. We are unable to see any rea-

son why it cannot do so equally as well as on the basis of population. Why it can be said that a community having 299 voters shall be a town and have certain powers, and one having 300 voters shall be a city and have additional powers, and that this is a uniform system of classes and constitutional, and in the same breath said that the Legislature cannot provide a different character of government for a community which has failed and continues to fail to pay its money obligations, from that provided for a community which fulfils its duties in such respect, is not perceptible to us. If it be urged that the class now sought to be created does not include all towns or cities having any indebtedness, but fixes a large minimum of indebtedness, the answer is that it is just as competent to exclude a city from the " indebtedness class " because its debt does not reach a certain amount, as it is to exclude a town from the old city class because it only had 299 voters, or to exclude a community from both the town and city classes because it has only 24 voters in it, and not 25. To our minds the creation of a separate class, founded upon those public necessities or duties, a disregard of which has occasioned a dissolution of municipal bodies, seems much less illusory, and much more reasonable and substantial than a distinction based on mere population. Take two inland, or two seaport towns or cities, one having a population, say of 299 registered voters, and the other of 300, or other approximate numbers, is there not much more reason in making a discrimination in their powers and form of government, on the basis of their relative financial condition, than on this mere difference in population? It should not be forgotten that the division of classes by the Legislature is not unchangeable by the Legislature. Nor do we think that the mere fact that the system provided for such defaulting corporations is provisional makes any difference.

When it is said the Constitution does not authorize it, it should be remembered that the proper inquiry is, does it prohibit it? Why is not a provisional system, to meet as they arise certain conditions, a proper feature of a uniform system of municipal government? Assuming that the form of government provided by this act is to last only four years, where is the prohibition against it? All coming within it are treated alike. In the case of Memphis the system was provisional, in part at least.

We do not think the act is special, but think it is general and uniform in its operation, creating a class which is constitutional, even though there be but one of it now.

III. It is urged upon us that the act is in opposition to the right of the people to local self government. Mr. Cooley says: "Nor are courts at liberty to declare an act void because, in their opinion, it is opposed to a spirit which is supposed to pervade the Constitution, but not expressed in words." Const. Lims., 171; 24 Wend., 220; 20 Wend., 381; 13 Wend., 391; 4 Mich., 244.

It is not necessary to quote from the present Constitution of Florida to convince the bar or the public that the spirit of such instrument is not opposed to the appointment of officers. It provides specially for the appointment by the Governor, with, in some cases, the consent of the Senate, of all county officers except constables, all State officers except the Lieutenant-Governor, for the appointment of the entire judiciary, and for the election of only the Governor, Lieutenant-Governor, constables and members of the Legislature. Section 27 of Article 4 is: "The Legislature shall provide for the election by the people or *appointment by the Governor* of all State, county or *municipal* officers not otherwise provided for by this Constitution, and fix by law their duties and compensation." Who can say that the appointment of municipal officers is not as

much within the authority and spirit of this Constitution as their election would be? The change made by this act, in the class or cases it covers, to the appointive system is certainly evidence that in the minds of the Legislature the necessity for its exercise exists in one or more communities, and if such necessity does exist, is it not well that there is a constitutional provision permitting it?

IV. "It does not prescribe a rule of civil conduct," but deals only with the past and present, and not with the future, is urged as an objection. This objection is practically disposed of in a former part of this opinion by the construction we have given the statute. In the case of Meriweather vs. Garrett, 102 U. S., 472., (October Term, 1880,) it is said: "The right of the State to repeal the charter of Memphis cannot be questioned. Municipal corporations are mere instrumentalities of the State for the more convenient administration of local government. Their powers are such as the Legislature may confer and they may be enlarged, abridged or entirely withdrawn at its pleasure. This is common learning, found in all adjudications on the subject of municipal bodies and repeated by the test writers. There is no contract between the State and the public that the charter of a city shall not be at all times subject to legislative control. There is no such thing as a vested right held by an individual in the grant of legislative power to them." 17 Wall., 322; 93 U. S., 108; 13 Wend., 324; 64 Penn. St.,169; 29 W.,12; Cooley, 192, 193; 42 Cal., 541; Cooley, C. L., 118. Unless there is a limitation in the Constitution restraining the Legislature, it can at will dissolve one city or many municipalities, and leave others in existence; it could moreover dissolve all existing municipalities, and prevent the same communities from reorganizing, yet provide for others to incorporate. We have previously disposed of the only

difficulty arising in this case on this point—*i. e.*, its consideration in connection with the provisions of the Constitution heretofore discussed in the second paragraph of this opinion. The Legislature has not pretended to either compel communities to organize as municipalities, nor when so organized to remain such, but has expressly provided for surrender of its franchises by any city or town. We are not satisfied that having the power to authorize one or many to surrender its corporate existence, it cannot for satisfactory cause dissolve any one of them. The Legislature in repealing or modifying the charter of a municipality is not creating rules for the regulation of future controversies between parties; it is simply as it were shaping its own instrumentality. What we say under this head is sufficient to show that municipal corporations can, independent of Constitutional limitations, be dissolved, without violating the principle suggested for petitioner, and it is not necessary here to go any further in deciding the objection.

V. It is contended that the second section confers judicial powers on the Governor. The identical provision is in the Tennessee act, and it is mentioned both by the Supreme Court of Tennessee and that of the United States; the objection made here, however, does not seem to have occurred to either, or, if it did, was not deemed worthy of comment.

A statute of Florida (chapter 3025) provides that whenever in the opinion of five or more registered inhabitants of any town or city the boundaries of the town or city are of unreasonable or unnecessary extent such persons may set forth by petition to the County Commissioners their complaint of such undue extent of area, whereupon the commissioners shall notify the Mayor, and appoint a day for hearing the statements of both parties, and if upon such hearing the commissioners shall be of opinion that the

boundaries of such town or city are extended beyond necessary and useful limits, and include an undue amount of farming or vacant land, they may prescribe such new boundaries for such town or city as may seem to them right, and thereafter the boundaries so prescribed shall be taken to be the lawful boundaries of said town or city and shall limit its corporate authority. The act also authorizes the commissioners to enlarge the boundaries on application of the corporate authorities thereof. "The *power* of the County Commissioners," say this court in city of Jacksonville vs. L'Engle, 20 Fla., 351, "as conferred by the act * * * was not strictly judicial within the prohibition of the Constitution. Like the power to hear and determine applications to lay out, or open roads, and discontinue, locate and build bridges, and similar powers and duties, they merely exercise such judgment and discretion, *adopting such measures under the law as to them may seem conducive to the public convenience,* and public needs. Indeed to deny the power of the Legislature to confer such duties upon ministerial officers, in the performance of which duties they merely exercise discreet judgment with reference to the convenience and interests of the public, would have the effect, to *abrogate nearly if not quite all* the powers and duties usually exercised by County Commissioners in conducting the ordinary business of the county." We feel that it is not necessary to do more than ask an application of the doctrine, thus so well put by Chief Justice Randall, to the duties imposed, by the act under review, upon the Governor. Separating the power to act from the conclusive effect of the executive action, it seems in view of the above decision unnecessary to extend this opinion upon this point. Assuming the doctrine of counsel for the petitioner to be correct, what would become of nearly if not

quite all the ordinary powers and duties usually exercised by the Governor and Comptroller? "An inquiry by the Legislature into the affairs or defaults of a corporation with a view to continue or discontinue, is not a judicial act." Crew vs. Babcock, 23 Pick, 334. Why should such inquiry if imposed on the Governor be judicial? We do not see any difference.

We, however, do not think it necessary to decide, nor do we intend in any wise to commit ourselves either against or in favor of the doctrine, that this act, in so far as it pretends to make the Governor's decision or proclamation conclusive of the indebtedness of any city or town, is constitutional. 55 Wis., 197. The provision as to conclusiveness may be eliminated and still the remainder of the act will stand. It can hardly be contended that the act would not have been passed but for the presence of this provision. Cooley Con. Lim., m. p. 178 ; 55 Wis., 197.

When the correctness of the Governor's decision as to any city or town being indebted, as contemplated by this statute, shall be gainsaid, we will decide upon the conclusiveness of such decision. In so far as the observations of counsel as to the absence of directions as to the manner or means by which the Governor shall inform himself in order to properly ascertain the existence or non-existence of such indebtedness, it is presumed that he will exercise at least that care which should characterize a Chief Executive in all his official acts. It is certainly not contended here that he has erred in either his judgment or methods ; and if he has not there is no practical ground for complaint. We do not think it was necessary for the statute to present the method of his proceeding, nor has any authority to such effect been furnished to or found by us.

We do not think section 2 delegates to the Governor "the power of making and unmaking municipal corporations in

the State of Florida." The statute is itself as positive as language can make it in declaring which class of municipal bodies shall have the form of government it prescribes, and in performing the duties prescribed by section 2 he does nothing more than an ordinary executive function requiring the exercise of judgment. Without section 2 it would have been his duty to proceed at once to appoint Commissioners under section 5 for corporations at the time in the condition contemplated by section 1, and had he in the absence of section 2 still transmitted copies of the act to said Mayor, and issued proclamations of the kind indicated, he would have merely adopted a mode clearly within his ordinary power and entirely consistent with the importance of the duty and with public interest. Section 2 vests no discretion in him as to whether section 1 shall apply to any particular town or city; it is his plain duty, however, to enforce the act as to all cities as to which it applies, and this section prescribes the manner and time of his action as to places which, within such time, should be found within the act. It gives no power that is not clearly implied in the remainder of the act.

We do not mean to admit by what we have said that it is "always essential that a legislative act should be a com6leted statute which must, in any event, take effect as a law at the time it leaves the hands of the legislative department. A statute may be conditional and it may be made to depend upon a subsequent event." Cooley C. L., 117. Congress may make the revival of a law conditional upon a fact then contingent, and empower the President to declare by his proclamation that such fact has occurred and the law revived. Brig Aurora vs. U. S., 7 Cranch., 382. A statute repealing a charter at a certain date provided that if a company shall make up a deficiency in its assets before that date, the charter shall remain in force;

and appointing a special tribunal to determine whether the deficiency is made up, is not a delegation of legislative power and is valid. Lothrop vs. Hedman, 42 Conn., 583 ; Guild vs. Chicago, 82 Ill., 472.

VI. The next objection is that the statute is violative of section 14, Art. 4, of the Constitution, which provides that: " Each law enacted in the Legislature shall embrace but one *subject*, and matter properly connected therewith, which *subject* shall be briefly expressed in the title." A careful reading of this section shows that it is sufficient that the title should express the *subject* and that it is not necessary for it to set out " the matter properly connected therewith." It is contended that the title is not sufficient to cover the provision, fourth section, which makes a refusal upon the part of officer of the former government to deliver property to a new or provisional officer, on demand, a felony. It seems to us that, independent of all authority, such delivery, and the punishment of a refusal, is a matter properly connected with the *dissolution of a municipal corporation*, and *the institution* of a *provisional government for the same*, the subject expressed in the bill and the general object of the legislation. Mr. Cooley says : " The general purpose of these provisions is accomplished when a law has but one general object which is fairly indicated by its title. To require every *end* and *means necessary* or *convenient* for the accomplishment of this general object would not only be unreasonable but would actually render legislation impossible. * * * The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection." Const. Lim., 144. A statute entitled " an act to amend an act entitled an act to incorporate the Northwestern University," prohibited the sale of spirituous liquors within four

miles of the University. The Supreme Court of Illinois held the title sufficient, and the act valid under a similar constitutional provision. O.'Leary vs. County of Cook, 28 Ill., 534. In Ex-parte Mabry the Court of Appeals of Texas held that the title: " An act to levy a tax on the privilege of keeping or harboring dogs, and to provide for the assessment and collection of the same," was sufficient to cover a provision making and punishing as a misdemeanor a failure to pay the tax. 5 Texas, Ct. of App., 93. " The act," says the court, " embraces but one leading subject and all its provisions are subsidiary to, and legitimately connected with, and tend to effect and enforce the main object embraced in the title of the act." In Thomasson vs. State, 15 Ind., 450, it is held that "though some of the sections found in the act may be civil, and others penal in their character, yet the act cannot be said to embrace more than one subject matter and matters properly connected therewith." See also Harris vs. People, 59 N. Y., 599; Gloversville vs. Howell, 70 N. Y., 287; Hunter vs. Burnsville Turnpike Co., 56 Ind., 213; 50 N. Y., 504; 69 N. Y., 657. " There has been," says Mr. Cooley, " a general disposition to construe the constitutional provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted." Const. Lim., 146. We think the section has proper connection with and relation to the subject of the act, and see nothing in it contravening the spirit and well known purposes of the constitutional provision.

VII. It is also suggested that the act violates section 17, of Article 4, because it regulates the duties and punishment of a certain class of officers, that are not applicable to all others. This section provides that the Legislature shall not pass special or local laws " regulating the jurisdiction

and duties of any class of officers or for the punishment of crime or misdemeanor." The law is general as to the whole class, and not special as to any one of the class, and it is not local to one city or town, as contradistinguished from another in the situation or condition making the class.

VIII. It is claimed that section 5 of the act is in conflict with sections 16 and 18 of Art. 6 of the Constitution. Section 16 provides : " The Legislature may establish courts for municipal purposes only in incorporated cities and towns. All laws for the organization or government of municipal courts shall be general in their provisions, and be equally applicable to the courts of all incorporated towns and cities." Section 18 is : " No other courts than those herein specified shall be organized in this State." The same court which is established for all other cities and towns is made applicable to those which may exist under this act. The Mayor or President of the Council presides in the court of the former, and the President of the Board of Commissioners, or President *pro tem.*, in the latter. All the duties of the Mayor under the former system are given to the President of the Board in the latter. There is no substantial difference whatever in the organization or powers of the court in the two cases. A " Mayor " in one and the " President " in the other, are officers of the same powers. The judicial power under both systems is really in the same officer. The fact that the " President " is chosen by his fellow Commissioners does not violate the above provision. The court is nevertheless established by the *Legislature.* The Governor in appointing the Commissioners is presumed to act with a view to the fact that any one of them may have to fill the Presidency and perform its duties. We do not see anything or any part of the Constitution hampering the legislation in the manner suggested.

As to section 18 it is only necessary to say that no court not municipal in its character is created, and all that is done is to make the existing municipal courts applicable to the new class of municipalities.

IX. It is urged also that section 8 of the statute militates against section 27, Art. 4, directing that " the Legislature shall provide for the election by the people, or appointment by the Governor, of all State, county or municipal officers not otherwise provided for by the Constitution, and fix by law their duties and compensation."

This section of the act has been repealed as shown by the statement of the case. The objections made were to its giving the appointment of the Marshal and Clerk and the regulation of their compensation to the Board of Commissioners. The repealing act removes the appointing power, and the objection falls with it. The same objection it is claimed extends to section 11, providing for the compensation of the " President of the Board." We are perfectly satisfied that this section might be eliminated and still the remainder of the act would stand. This being so it is unnecessary, if not improper, to pass on the question. It is a fact, however, that legislation, since the adoption of Constitution of 1868, (sec. 42, McC. Digest,) has left the compensation of municipal officers to the legislative power of cities and towns, and such legislation has uniformly been and is now acted on. The case at bar discloses no practical interest in a further discussion of this question. We have carefully considered every point made in the briefs of the counsel for the petitioner, and applying the well known rules of law applicable to the question of the constitutionality of a statute, our conclusion is, there are no defects in the statute which defeat it as dissolv-

ing certain municipalities and instituting a new class of municipal governments.

The writ is dismissed, and the petitioner will be remanded.